

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-1448-13

**CHARLES LAVOY ARRINGTON, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTH COURT OF APPEALS
### BEXAR COUNTY

ALCALA, J., delivered the opinion of the Court, in which KELLER, P.J., and KEASLER, HERVEY, RICHARDSON, and NEWELL, JJ., joined. JOHNSON, J., concurred. MEYERS and YEARY, JJ., did not participate.

### O P I N I O N

This case addresses whether a defendant suffers egregious harm from erroneous jury instructions permitting a non-unanimous verdict when a jury confronted with two diametrical positions reaches multiple verdicts signifying, in the aggregate, its belief in the credibility of the State's evidence and its disbelief in the defendant's evidence. The State's petition for discretionary review argues that the court of appeals erred by determining that erroneous jury

instructions permitting non-unanimous jury verdicts caused egregious harm to Charles Lavoy Arrington, appellant. *Arrington v. State*, 413 S.W.3d 106, 118 (Tex. App.—San Antonio 2013). The State challenges the court of appeals's judgment in favor of appellant that reversed his six convictions, including five convictions for aggravated sexual assault of a child and one conviction for indecency with a child by contact. We conclude that, by improperly failing to consider all of the evidence that was admitted at trial and by finding dispositive the jury's inability to reach a verdict on a single count without considering other rational reasons for the lack of a verdict on that single count, the court of appeals erroneously determined that the faulty instructions egregiously harmed appellant. We reverse the judgment of the court of appeals and remand this case for consideration of appellant's other issues on appeal.[1]

## I. Background

### A. The Facts and Trial Court Proceedings

The complainant, H.A., is appellant's daughter. H.A. and her younger brother lived

---

[1] Appellant raised five issues in the court of appeals: (1) the trial court committed jury-charge error by failing to give a unanimity instruction as to each separate criminal incident alleged at trial, as charged in each separate count in the indictment; (2) the trial court's jury-charge error egregiously harmed him; (3) alternatively, the trial court's jury-charge error rendered his trial fundamentally unfair in violation of the Due Process Clause of the Fourteenth Amendment of the United States Constitution; (4) his trial counsel rendered ineffective assistance by failing to object to the State's elicitation of expert witness testimony about the truthfulness of the complainant's sexual-misconduct accusations; and (5) his trial counsel rendered ineffective assistance by failing to object to the State's elicitation of lay-witness testimony about the truthfulness of the complainant's allegations. *Arrington v. State*, 413 S.W.3d 106, 109 (Tex. App.—San Antonio 2013).

with their mother, who had separated from their father, appellant, when H.A. was very young. H.A. and her younger brother visited appellant on occasional weekends and holidays for several years. In 2010, H.A. made an outcry that during two of those visits earlier that year, appellant had sexually abused her in numerous ways in four different places in appellant's homes. In 2010, H.A. was nine years old and her younger brother was eight years old.

H.A. indicated that the first time appellant sexually touched her was when appellant was living with his mother, H.A.'s grandmother. Appellant's room, in the back of the house, had a mattress on the floor and a television. H.A. was lying awake on the mattress while her younger brother sat at the foot of the mattress playing a video game. As he lay next to H.A. on the mattress, appellant "stuck his hands down [her] pants" and "rubbed" her "vagina and [her] butt." H.A. said that she was scared and shocked and did not say or do anything as appellant fondled her. H.A. testified specifically that appellant did not penetrate her female sexual organ or her anus with his finger during this incident.

The second event occurred in appellant's shower during H.A.'s spring break later that same year. At that time, having moved out of his mother's house, appellant was cohabiting with his girlfriend. H.A. and her brother visited appellant for a few days and slept on a mattress in the living room during their stay. While appellant, H.A., and H.A.'s brother were watching a movie in the living room, appellant told H.A. to take a shower in appellant's bathroom. While H.A. was showering, appellant turned the lights off in the bathroom and

joined her in the shower. Appellant washed H.A.'s body, touching H.A.'s breast, female sexual organ, and buttocks in the process. H.A. stated that appellant did not penetrate her female sexual organ or her anus during this incident, but that he only put his hands on the "front part" of her female sexual organ and on the "top part" of her buttocks. He then made H.A. get down on her hands and knees and place his male sexual organ in her mouth. H.A. tried to pull away but appellant held the back of her head. Appellant also forced H.A. to rub his penis using a "back and forth" motion. At the subsequent trial, H.A. answered "yes" to a single question asking whether appellant also placed his mouth on her vagina during this incident. H.A., however, gave no details about that conduct.

H.A. described the third event, explaining that it occurred the following day and again in a shower, but this time it took place in the shower for guests, which H.A. used during her visit. While H.A. was in the shower, appellant joined her there. Appellant rubbed and digitally penetrated H.A.'s female sexual organ and anus, and H.A. recalled that it hurt. Appellant then forced her to get on her hands and knees and he placed his male sexual organ in H.A.'s mouth. During this incident, appellant also knelt down, "widened his legs around [H.A.'s] legs," and placed his male sexual organ in her female sexual organ. H.A. stated that he was "humping" her by "moving his hips back and forth." She stated that this hurt her. H.A. also stated that during this encounter appellant placed his male sexual organ in her anus, and that this hurt as well.

The fourth event occurred the next day in the living room of appellant's girlfriend's

house. After watching a movie together with H.A. and appellant on the mattress, H.A.'s brother fell asleep. Appellant picked H.A.'s brother up and placed him on a nearby sofa, leaving H.A. alone on the mattress with appellant. Appellant pushed her beneath the covers on the mattress and forced her to place his male sexual organ in her mouth. H.A. gagged and told him to stop. Appellant then fondled H.A.'s breasts, female sexual organ, and buttocks, digitally penetrating her female sexual organ and anus. While facing each other on the mattress, appellant placed his penis in her female sexual organ. After that, he turned her around so that she was "facing away" from him and placed his penis "in [her] butt." H.A. described appellant as "humping" her in a back and forth motion. H.A. recalled that appellant asked her if it "felt good," and H.A. responded "no" as she pleaded for him to stop. H.A. described that a clear gel that looked like "smushy stuff" came out of appellant's penis that made it slippery.

Later that school year, after she had returned from spring break, H.A. told friends that she was pregnant, and rumors spread throughout the school, ultimately reaching Lisa McGinnis, H.A.'s school counselor. McGinnis questioned H.A. about the rumors and informed H.A.'s mother about them. H.A. denied to her school counselor and to her mother that she was pregnant or that she had been abused. H.A. said it was all a misunderstanding and "she was just talking about, basically, where babies come from and her friends had misunderstood her." Two days later, on the last day of school, as the rumors persisted with additional information that H.A. believed that her father was the father of the baby,

McGinnis again approached H.A. about the pregnancy rumors. During that conversation, H.A. "became tearful and she told [McGinnis] that her father had touched her inappropriately."

After H.A. made an outcry to her school counselor, a police investigation began and H.A. was examined by a Sexual Assault Nurse Examiner. The nurse did not find any physical evidence of the abuse during her examination. The nurse explained at trial, however, that because of the two-month delay between the described sexual abuse and her examination, the absence of physical findings was not inconsistent with H.A.'s report of sexual abuse. The nurse conveyed H.A.'s numerous descriptions of the sexual abuse, as described above.

At his trial, appellant testified, denying that he had sexually abused H.A. He claimed that H.A. was lying about everything and that H.A.'s mother had falsely accused him of rape in the past. He presented testimony from his mother, with whom he lived during the first event described by H.A., from his girlfriend, with whom he cohabited during the spring break incidents described by H.A., and from H.A.'s brother. These witnesses generally corroborated that H.A. was with appellant during the periods of time that she described, but they denied seeing anything unusual and described H.A. as acting normally. Appellant's girlfriend acknowledged that she was at work during points in time when H.A. was staying at her house, but some of her testimony with respect to where she was during the periods described by H.A. conflicted with H.A.'s testimony.

The indictment against appellant charged him with six counts of aggravated sexual assault of a child and one count of indecency with a child. Counts one through five and count seven alleged that, on or about March 26, 2010, appellant committed the offense of aggravated sexual assault of a child by intentionally and knowingly (1) causing the penetration of the female sexual organ of H.A. by appellant's male sexual organ; (2) causing the penetration of the anus of H.A. by appellant's male sexual organ; (3) causing the female sexual organ of H.A. to contact the mouth of appellant; (4) causing the penetration of the mouth of H.A. by appellant's male sexual organ; (5) causing the penetration of the female sexual organ of H.A. by appellant's finger; and (7) causing the penetration of the anus of H.A. by appellant's finger. Count six asserted a charge of indecency with a child by intentionally and knowingly engaging in sexual conduct or contact on or about the same date by causing H.A., who was under seventeen years of age, to touch part of the genitals of appellant with the intent to arouse or gratify the sexual desire of any person.

The trial court's instructions to the jury permitted the jurors to consider whether appellant was guilty of each of the seven alleged offenses. The jury instructions, however, did not specifically inform the jurors that they had to be unanimous as to which separate criminal act they believed constituted each count. Neither the State nor appellant objected on the ground that the jury instructions permitted non-unanimous verdicts. Although the instructions did not specifically identify the particular incidents as they corresponded to the seven charges that were to be considered by the jury, the trial court's jury instructions

generally instructed the jurors that their verdict had to be unanimous. The instructions stated,

> After you retire to the jury room, you should select one of your members as the foreperson. It is his or her duty to preside at your deliberations, to vote with you and when you have unanimously agreed upon a verdict to certify to the verdict by signing the same as foreperson.

Neither the State nor appellant mentioned a unanimity requirement in their closing statements, nor did they do so at any other point during the trial.

Following deliberations, the jury found appellant guilty on six of the seven counts for which he was indicted, including five counts of aggravated sexual assault and one count of indecency with a child. The jury sentenced appellant to sixty years' imprisonment for each count of aggravated sexual assault of a child and twenty years' imprisonment for indecency with a child. The trial court ordered the sentences to run concurrently. Because of the jury's failure to reach a unanimous decision on count three, the trial court declared a mistrial on that count that had alleged that appellant caused the female sexual organ of H.A. to contact his mouth.[2] Prior to announcing the verdict, the court asked the jury if it had reached a unanimous verdict on all counts except count three, to which the jury foreman answered in the affirmative.

### B. The Opinion by the Court of Appeals

---

[2]
The State's brief in this Court represents that the State dismissed count three after the trial court declared a mistrial with respect to that count, but the clerk's record shows that count three was resolved by a "judgment of acquittal by jury." It is immaterial to our resolution of this appeal whether, after the trial court declared a mistrial based on the jury's inability to reach a verdict when count three was tried along with counts one through seven, count three was subsequently resolved by a dismissal by the State or by acquittal.

On appeal, with respect to appellant's claim of charge error, the court of appeals determined that the record included evidence of more than one instance of sexual contact to support each count for which appellant was convicted, and it further determined that no unanimity instruction informed the jurors that they had to be unanimous about which instance of abuse constituted the commission of the offense for purposes of each individual count. *Arrington*, 413 S.W.3d at 112. It stated, "[G]uaranteeing unanimity is ultimately the responsibility of the trial judge because the judge must instruct the jury on the law applicable to the case." *Id*. at 110 (citation omitted). On that basis, it reasoned that "the trial judge is therefore obligated to submit a charge that does not allow for the possibility of a non-unanimous verdict." *Id*. The court of appeals further noted that "[t]he jury could have relied on separate incidents of criminal conduct, which constituted different offenses or separate units of prosecution, committed by appellant to find him guilty in the counts." *Id*. at 110-11 (citing *Cosio v. State*, 353 S.W.3d 766, 774 (Tex. Crim. App. 2011)); *see Francis v. State*, 36 S.W.3d 121, 125 (Tex. Crim. App. 2000) (concluding there was error in failing to include unanimity instruction and noting that "it is possible that six members of the jury convicted appellant on the breast-touching offense (while the other six believed he was innocent of the breast-touching) and six members convicted appellant on the genital-touching offense (while the other six believed he was innocent of the genital-touching)").

The court of appeals discussed the particular acts that supported each count. With respect to count one, which alleged that appellant's male sexual organ penetrated H.A.'s

female sexual organ, the court concluded that H.A.'s testimony presented evidence of two separate criminal acts that would constitute this offense in her description of the events in her shower and those occurring on the mattress in appellant's girlfriend's living room. *Id*. at 111. With respect to count two, which asserted that appellant's male sexual organ penetrated H.A.'s anus, the court observed that H.A. described two different incidents that would support this offense—the events in H.A.'s shower and the events on the mattress in appellant's girlfriend's living room. *Id*. Count three alleged that appellant's mouth contacted the female sexual organ of H.A., and the court noted that evidence of only one incident of that type of conduct was presented at trial—the events in appellant's shower. *Id*. Count four asserted that appellant's male sexual organ penetrated H.A.'s mouth, and the court determined that evidence of three different incidents supported this offense—the events in appellant's shower, in H.A.'s shower, and on appellant's girlfriend's living-room mattress. *Id*. Count five alleged that appellant's finger penetrated H.A.'s female sexual organ, and the court observed that two different incidents supported this offense—the events in H.A.'s shower and those occurring on the mattress in appellant's girlfriend's living room. *Id*. Count six pleaded a charge of indecency with a child by causing H.A. to touch appellant's genitals, and the court determined that evidence of multiple incidents supported this offense, some of which may have been subsumed within the aggravated sexual assault offenses. *Id*. Count seven alleged that appellant's finger penetrated H.A.'s anus, and the court noted that two different incidents supported this offense—the events in H.A.'s shower and the events

occurring on appellant's girlfriend's living-room mattress. *Id*. at 112.

The court of appeals held that, because evidence of multiple instances of criminal conduct constituting the offenses was presented at trial, an instruction on juror unanimity as to those particular incidents was required. *Id*. (citing *Cosio*, 353 S.W.3d at 772). In the court of appeals, the State conceded that the instructions were erroneous, and it has not challenged that determination in this petition for discretionary review.

The court of appeals further held that the erroneous jury instructions egregiously harmed appellant and, on that basis, it reversed his six convictions and remanded the case to the trial court for a new trial. *Id*. at 118. The court of appeals found the existence of egregious harm by observing that the entire jury instructions did not require a unanimous jury on any of the counts, that the State's evidence was weak, and that the hung jury in count three, the only count supported by a single incident, necessarily signified that the jury relied on multiple incidents to support each of the other counts. *Id*. at 117-18. The State challenges this holding in its petition for discretionary review, which asks "[w]hether the Fourth Court of Appeals based its egregious harm finding on theoretical harm instead of actual harm as required by *Almanza* when an unpreserved jury charge error occurs."

## II. Analysis

In support of its position that the court of appeals erred in its application of *Almanza*, the State argues that the lower court's opinion has expanded the scope of actual harm to encompass elements unrelated to charge error. The State also argues that the court of appeals

undermined the jury's credibility determination of the complainant's testimony by failing to fully review the entirety of the evidence in the record. Appellant responds that the court of appeals conducted a proper harm analysis and reached the correct result. We conclude that, although the court of appeals properly articulated the applicable law for assessing whether egregious harm exists, it erred in its application of the law to the facts of the case by failing to consider the entire record, which resulted in the reversal of appellant's convictions for theoretical rather than actual harm.

The court of appeals correctly articulated the applicable law by observing that reversal for an unobjected-to erroneous jury instruction is proper only if the error caused actual, egregious harm to an appellant. *Ngo v. State*, 175 S.W.3d 738, 743-44 (Tex. Crim. App. 2005). "An egregious harm determination must be based on a finding of actual rather than theoretical harm." *Cosio,* 353 S.W.3d at 777. Actual harm is established when the erroneous jury instruction affected "the very basis of the case," "deprive[d] the defendant of a valuable right," or "vitally affect[ed] a defensive theory." *Id.* (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)).

In describing the applicable law, the court of appeals properly observed that an appellate court should examine four factors to determine whether an appellant was egregiously harmed by an erroneous jury instruction. When assessing harm based on the particular facts of the case, we consider (A) the entire jury charge; (B) "the state of the evidence[,] including contested issues and the weight of the probative evidence"; (C) the

parties' arguments; and (D) all other relevant information in the record. *Id.* (citations omitted). The court of appeals also accurately observed that the *Almanza* analysis is fact specific and is done on a "case-by-case basis." *Gelinas v. State*, 398 S.W.3d 703, 710 (Tex. Crim. App. 2013).

**A. The Entire Jury Charge**

The court of appeals properly observed that this factor weighs in favor of finding egregious harm because the instructions "permitted non-unanimous verdicts based on the evidence presented in the case." *Arrington*, 413 S.W.3d at 112. The court of appeals also accurately noted that the "only mention of the word 'unanimous' in the entire charge" was the boilerplate language regarding selection of the jury foreman that required the foreman to certify the jury's verdict "when you have unanimously agreed upon a verdict." *Id.* The court of appeals concluded that the "error did not affect only one count, but instead affected all counts upon which appellant was convicted. Therefore, this factor weighs in favor of finding egregious harm." *Id.*

The court of appeals observed that the facts in this case were similar to the facts in *Cosio*, a case in which this Court determined that the erroneous instructions did not egregiously harm Cosio. The court of appeals, however, distinguished the present case on the basis that there were multiple generic unanimity instructions in *Cosio* as compared to only a single generic unanimity instruction here. *See Arrington*, 413 S.W.3d at 117 (discussing *Cosio*, 353 S.W.3d at 770). In *Cosio*, the defendant was convicted of two counts of

aggravated sexual assault of a child and two counts of indecency with a child by contact, each supported by evidence of multiple incidents of criminal conduct. *Cosio*, 353 S.W.3d at 769. In that case, the jury was given multiple instructions on unanimity, but none was adequate to appropriately inform the jurors that this meant they had to be unanimous as to which incident of criminal conduct they believed constituted each count in the indictment. *Id.* at 774. We conclude that the court of appeals erred by focusing on the number of times the instructions informed the jury of a generic unanimity requirement because, regardless of the number of times the generic requirement was mentioned, the entire instructions failed to apprise the jurors that they had to be unanimous on which incident of criminal conduct they believed constituted each count in the indictment. *See Cosio*, 353 S.W.3d at 774. The multiple generic instructions in *Cosio*, therefore, were no more effective at informing the jury of the proper unanimity requirement than the single generic unanimity instruction given in this case. *See id*. We, therefore, disagree with the court of appeals that *Cosio* is distinguishable merely because the generic instructions were multiply given. Because the entire charge did not apprise the jury of the proper unanimity requirement, we conclude that this factor weighs in favor of finding egregious harm, but we give this factor no more weight than we gave it in *Cosio*. *See id*.

**B. The State of the Evidence**

The court of appeals properly described the applicable law with respect to the analysis of the state of the evidence, but it erred by failing to consider the entire record. The court of

appeals correctly noted that, under this prong of an egregious harm review, we look to the state of the evidence to determine whether the evidence made it more or less likely that the jury charge caused appellant actual harm. *See, e.g., Ngo*, 175 S.W.3d at 751-52. The court of appeals ultimately characterized the state of the evidence by stating,

> Given that the opinions on H.A.'s truthfulness went without objection in a case where it was essentially appellant's word against H.A.'s (there were no witnesses and no DNA/medical evidence), we believe the state of the evidence factor weighs slightly in favor of finding egregious harm when, as here, there was no unanimity instruction and the question of whether appellant committed any of the acts is obviously the contested issue at trial.

*Arrington*, 413 S.W.3d at 115. The court of appeals observed that the lack of definitive medical evidence resulted in a "he said, she said" between H.A. and appellant. *Id.* at 113. The court also questioned H.A.'s credibility by noting that H.A. first denied having been sexually abused by appellant when she was initially questioned about it by her school counselor. *Id.* at 113-14. Although it appropriately considered pieces of the record that showed the lack of medical findings and H.A.'s inconsistent statements, the court of appeals erred by failing to consider the entire record, which, when viewed as a whole, weighs against a finding of egregious harm for the following three reasons.

First, as the State points out, the court of appeals failed to consider the entire record that shows that the jury disbelieved appellant's defensive evidence. In this regard, the State contends in its brief that the jury had "both sides to evaluate" and that the court of appeals "did not even mention that [appellant] and his girlfriend testified." The State suggests that appellant's "trial strategy left the jury with an all-or-nothing decision, either he was guilty

or he was not." As support for its argument that this type of strategy weighs against a finding of egregious harm, the State cites to *Ruiz v. State*, 272 S.W.3d 819, 826-27 (Tex. App.—Austin 2008, no pet.). In *Ruiz*, the court of appeals held that the state of the evidence weighed against an egregious harm finding because Ruiz did not argue he was guilty of only some of the allegations, but rather argued that he had committed none of the alleged conduct and that the complainant in that case was lying to manipulate her parents or to get revenge on Ruiz. *Id*. Similarly, here, appellant denied that he had ever seen H.A. naked or that he had any inappropriate sexual contact with her. Appellant claimed that H.A.'s mother had in the past falsely accused him of rape, implicitly suggesting that she may have prompted H.A. to tell the lies against him. If the jury had believed appellant's testimony, then it would have found him not guilty of all of the counts of sexual abuse. Instead, in finding him guilty of all but one of the numerous counts of sexual abuse, the jury necessarily disbelieved appellant's defensive evidence. We, therefore, agree with the State that the court of appeals erred by considering a small portion of the record without appropriately examining the analytical meaning of the entire record, including the jury's rejection of appellant's defensive theory.

Second, the State challenges the analysis by the court of appeals weighing evidence that H.A.'s mother and school counselor believed that H.A. was telling the truth as supporting a finding of egregious harm because that was inadmissible bolstering evidence. We agree with the State that the evidence from H.A.'s mother and school counselor that they

believed H.A. was telling the truth is not evidence that weighs in favor of a finding of egregious harm. The court of appeals observed that the school counselor gave her opinion that H.A. was truthful in her accusations against appellant and that expert testimony that a particular witness is truthful is inadmissible under Rule 702. TEX. R. EVID. 702; *See Yount v. State*, 872 S.W.2d 706, 711 (Tex. Crim. App. 1993). The school counselor stated,

> I felt that she was telling me the truth based on the fact that she had details, for example, what movie they were watching; that her brother was playing PlayStation when it happened when she was nine; that she could very much put herself in the situation of what was going on exactly at that time. Those were the things that made me feel like she was telling the truth.

Although the court of appeals was correct that it would likely have been inadmissible had appellant objected to it at trial, the evidence was admitted for all purposes at the trial and was before the jury to consider in finding appellant guilty. *See Hammock v. State*, 46 S.W.3d 889, 892 (Tex. Crim. App. 2001) ("Once evidence is received without a limiting instruction, it becomes part of the general evidence and may be used for all purposes").

Similarly, the court of appeals erred by disregarding evidence from H.A.'s mother that had been admitted for all purposes at appellant's trial. Regarding H.A.'s truthfulness, H.A.'s mother stated, "She tells the truth." H.A.'s mother also testified that, when she asked H.A. if she was telling the truth, H.A. "said yes and she started crying." Because appellant's counsel did not object to this evidence, it was admitted for all purposes, and the jury could properly consider it as evidence of appellant's guilt. *See id.*[3]

---

[3]

We do not know appellant's trial counsel's reasons for permitting H.A.'s mother and school

An appellate court should not disregard evidence that was admitted for all purposes at a trial merely because it believes that a trial court could have excluded the evidence had a proper objection been presented. *See id*. In deciding egregious harm, an appellate court must examine whether an appellant suffered actual harm from the jury instruction as compared to theoretical harm that might have resulted had the case been litigated differently. *Almanza*, 686 S.W.2d at 174. We conclude, therefore, that the court of appeals's improper focus on theoretical harm resulted, in part, from its disregard of evidence from the complainant's mother and school counselor on the basis that the evidence would have been inadmissible, had appellant properly objected to it. *See id.*

Third, the court of appeals also noted that the school counselor described the first conversation she had with H.A. differently than H.A. described it and that, in light of the absence of medical evidence, this undermined the complainant's credibility and weighed in favor of finding egregious harm. The school counselor conveyed H.A.'s first explanation as H.A. talking with her friends about "where babies come from and her friends had misunderstood her." In contrast, H.A. claims that she first told her school counselor that the rumors were "just a joke" and she told her mother that "it was just a joke that my friend made

---

counselor to testify that they believed that H.A. was telling the truth. There may have been a rational trial strategy for permitting the evidence without objection. Appellate courts are required to presume that a trial counsel had a rational trial strategy. *See, e.g.*, *Chambers v. State,* 903 S.W.2d 21, 32-33 (Tex. Crim. App. 1995) (noting that, in reviewing claims of ineffective assistance of counsel, an appellate court must indulge a strong presumption that counsel's action was based on sound trial strategy). In any event, the reasonableness of counsel's trial strategy is not before us in this appeal, and we do not consider that matter in conducting our egregious-harm analysis.

me do." H.A. said that she lied to her mother at that point because she was "super scared that someone can hurt me and come find me." There were other inconsistencies in H.A.'s testimony regarding the types of sexual contact that occurred during each of the four instances of abuse. Specifically, she first testified that appellant did not penetrate her anus with his male sexual organ during the incident in H.A.'s shower, but later testified that he did in fact penetrate her anus with his male sexual organ during that encounter. We disagree with the court of appeals that mere inconsistencies in a complainant's testimony alone warrant a finding of egregious harm. The court of appeals failed to consider that, in deciding to convict appellant of six counts, the jury necessarily found the complainant credible. Although H.A. may have been inconsistent in attempting to explain the reason for the existence of the rumors, and was somewhat inconsistent as to the types of abuse that appellant inflicted upon her during each of the four incidents, the jury clearly resolved any inconsistencies in favor of H.A., and not appellant. We cannot conclude that any slight inconsistency in H.A.'s testimony had any actual effect on the unanimity of the jury's verdict.

The court of appeals erred by disregarding evidence that was admitted for all purposes at the trial and by failing to consider the entire record. The jury in this case, after hearing all the evidence, clearly credited H.A.'s story and did not believe appellant's categorical denial of all accusations. Had it believed appellant rather than H.A., it would have acquitted him of all charges. Because the entire record fails to show actual harm to appellant, this factor weighs against a finding of egregious harm.

**C. The Parties' Arguments**

The court of appeals properly described the applicable law and correctly determined that this factor weighs neither in favor of nor against a finding of egregious harm. *See Cosio*, 353 S.W.3d at 777 (noting neither the parties nor the trial court added to charge error by telling jury it did not have to be unanimous and, therefore, this factor did not weigh in favor of finding egregious harm). Under this factor, we look to whether any statements made by the State, appellant, or the court during the trial exacerbated or ameliorated error in the charge. *See, e.g.*, *Ngo*, 175 S.W.3d at 750. In *Ngo*, this Court found egregious harm when the jury charge did not contain a unanimity instruction and the jury was repeatedly told it need not return a unanimous verdict. *Id.* at 752. In contrast, in the present case, neither the State nor appellant told the jurors that they must be unanimous about which criminal episode constituted each offense, nor were they told that they need not be unanimous. This factor, therefore, weighs neither for nor against finding egregious harm.

**D. Other Relevant Information in the Record**

Under this prong, appellant argues, and the lower court's opinion held, that the mistrial declared in count three of the indictment against appellant is evidence of actual harm. *Arrington*, 413 S.W.3d at 116. Contrary to the lower court's opinion, however, the mistrial on count three fails to suggest actual harm to appellant because the evidence supporting count three was different in character from the evidence supporting the six counts for which the jury convicted appellant.

The court of appeals observed that "Count III was the only count on which evidence of only one incident was presented that would constitute the offense—the first shower," and that was the only count on which the jury was unable to reach a verdict. *Id*. The court of appeals concluded that, because the jury was unable to reach a verdict on the one count for which evidence of only one instance of abuse constituting the offense was presented, "this information in the record is relevant and weighs in favor of finding egregious harm." *Id*. The court of appeals quoted the portion of the trial at which the evidence supporting count three was introduced:

[State's Attorney]: Did he ever touch his mouth to your middle or your girl parts or your vagina?

[H.A.]: Yes.

[State's Attorney]: When did he do that?

[H.A.'s]: In the shower the first time.

[State's Attorney]: In the shower the first time?

[H.A.]: Yes.

*Id*. We also note that, in addition to this evidence, the nurse testified to the following:

[State's Attorney]: At any time did she indicate that he had kissed her front and middle parts?

[Nurse]: Yes.

[State's Attorney]: So she indicated that he had also contacted her genital area with his mouth?

[Nurse]: Yes.

Later in the nurse's testimony, an additional exchange took place:

[State's Attorney]: She also mentioned that he kissed her middle part?

[Nurse]: Yes.

[State's Attorney]: And that would be contact from his mouth to her genitals?

[Nurse]: Yes.

The nurse's "yes" answers to the State's questions and her representation about the isolated comment by H.A., combined with H.A.'s testimony described above, constituted the sole evidence supporting count three's allegation of oral contact with H.A.'s female sexual organ.

By way of comparison, the other counts were supported by H.A.'s descriptions in great detail that included, among other matters, the position of her body, the position of appellant's body, her feelings, and her attempts to stop appellant. For example, with respect to the incident in appellant's shower, H.A. described details that appellant made her get down on her hands and knees, placed his penis in her mouth, and that she tried to pull away but appellant held the back of her head. She also explained that appellant forced her to rub his penis using a "back and forth" motion. It is just as likely that count three was rejected because a juror was dissatisfied with the relative lack of detail in the evidence to support that count as it is that it was rejected because there was only a single incident to support the allegation of oral to vaginal contact. In any event, because there is at least one other reasonable explanation for the hung jury in count three other than the fact that there was only one incident supporting it, we cannot conclude that this is a rational basis for finding

egregious harm. Even if a juror or jurors believed that the fact that a single incident was inadequate to support a conviction in count three, that does not suggest that any of the jurors were less than unanimous on all of the other incidents, which were described by the complainant in great detail. This factor, therefore, does not weigh in favor of a finding of egregious harm.

### E. Consideration of the Four Factors

The only factor that weighs in favor of finding egregious harm is the consideration of the jury instructions. In *Cosio*, this Court found no egregious harm even though in that case that particular factor also weighed in favor of finding egregious harm. *See Cosio*, 353 S.W.3d at 777-78. Here, we similarly conclude that the erroneous jury instructions did not cause appellant egregious harm. *See id*. Although the instructions failed to identify the particular acts necessary to support each count, the evidence in the entire record and the analytical meaning of the jury's verdicts in the aggregate show that the erroneous instructions did not cause actual harm to appellant.

### III. Conclusion

We hold that the court of appeals erred by finding egregious harm based on the existence of theoretical rather than actual harm. Accordingly, we reverse the judgment of the court of appeals and remand this case to that court for consideration of appellant's remaining points of error.

Delivered: January 14, 2015

Publish