**Affirmed and Memorandum Opinion filed October 25, 2016.**



In The

# Fourteenth Court of Appeals

## NO. 14-15-00687-CR

## CONARD A. HARGEST, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 248th District Court
Harris County, Texas
Trial Court Cause No. 1444413**

## M E M O R A N D U M   O P I N I O N

Appellant Conrad A. Hargest appeals his sentence for burglary of a habitation with intent to commit sexual assault. *See* Tex. Penal Code §§ 22.011, 30.02(d) (West 2015). Appellant presents two issues: (1) appellant was egregiously harmed by the trial court's erroneous jury charge, which incorrectly indicated appellant's parole eligibility; and (2) appellant was egregiously harmed by the trial court's erroneous jury charge regarding the effect of good conduct time

on appellant's parole. We affirm.

## I. Factual and Procedural Background

Martha Mack, the complainant, was 91 years old and living in an assisted living facility. The facility's surveillance video showed appellant walking around at three in the morning and attempting to open multiple doors. Appellant entered complainant's apartment. Complainant testified that she awoke to a man who told her he was there for sex and money. He removed complainant's clothing, held her down, and sexually assaulted her. Semen was detected on complainant's bed sheets. DNA analysis could not exclude appellant as the contributor. Appellant took complainant's money, debit and credit cards, and then left the apartment.

At trial, appellant denied assaulting and stealing from complainant but admitted to being inside her apartment. Appellant testified that he got lost and thought he was entering his own home, a mistake he attributed to discontinuing his psychotropic medicine.

Appellant and his sister testified about appellant's history of mental illness, including bipolar disorder and schizophrenia. Appellant and his sister also testified that he had problems when he was not medicated. The jury convicted appellant of burglary of habitation with intent to commit sexual assault.

During the punishment stage, the State presented evidence regarding appellant's prior criminal history, bond violations, and mental illness. Appellant committed a separate burglary of habitation four days after the present offense. While on bond, appellant tested positive for THC and removed his ankle monitor. A field technician with Sexual Offender Services found the monitor in a trash can in downtown Houston. When appellant was arrested on his open warrant, he was carrying a BB gun that resembled a firearm. Appellant told his sister that he

wanted the police to kill him because he did not want to return to jail. As a juvenile, appellant was adjudicated for the offenses of indecent exposure, assault, evading detention, theft, robbery, and unauthorized use of a motor vehicle. As an adult, appellant was convicted for the offenses of theft and unauthorized use of a motor vehicle. Finally, the state re-offered all the evidence from the trial's guilt or innocence phase.

The trial court's jury charge on punishment contained this instruction regarding parole law:

> Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served plus any good conduct time earned equals one-fourth of the sentence imposed or fifteen years, whichever is less.

The charge also contained the following admonishment:

> You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

Neither party objected to the punishment jury charge. The jury sentenced appellant to life in the Texas Department of Criminal Justice, Institutional Division.

## II.    Analysis

Appellant contends he was egregiously harmed by the trial court's erroneous jury charge on the law regarding appellant's parole eligibility. Appellant's two issues concern the same portion of the jury charge. We address his two issues together because the applicable law and analysis are identical.

"We review alleged charge error by considering two questions: (1) whether error existed in the charge; and (2) whether sufficient harm resulted from the error to compel reversal." *Ngo v. State,* 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). If

3

a jury charge is erroneous, a harm analysis hinges upon whether a defendant objected to the charge. *See Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. 2016); *see also Igo v. State,* 210 S.W.3d 645 (Tex. Crim. App. 2006). If a defendant objected to the erroneous jury charge, reversal is required if we find "some harm" to his rights. *Almanza v. State,* 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g)). If the defendant did not timely object, reversal is required "only if the error was so egregious and created such harm" that the defendant did not have a "fair and impartial trial." *Id.*

To determine whether a defendant was egregiously harmed by an erroneous jury instruction, appellate courts traditionally consider: (1) the entire jury charge; (2) the state of the evidence; (3) the parties' arguments; and (4) all other relevant record information. *Arrington v. State*, 451 S.W.3d 834, 840 (Tex. Crim. App. 2015). The standard is difficult to meet and the harm suffered must be actual rather than theoretical. *Marshall,* 479 S.W.3d at 843. Neither party bears the burden to show harm or lack thereof as a result of the error. *Id.*

The State concedes that the jury charge in this case was erroneous. Appellant was convicted of burglary of a habitation with intent to commit sexual assault. For this offense, the trial court should have instructed the jury that appellant would not become eligible for parole until the actual time served equaled *one-half* of the sentence imposed *or 30 years*, whichever is less, *without considering good conduct time*. Tex. Code Crim. Proc. art. 37.07, § 4(a) (West 2015); Tex. Code Crim. Proc. art. 42.12, § 3(g)(N) (West 2015); Tex. Gov't. Code § 508.145(d)(1) (West 2013 Supp. 2016). The trial court instructed the jury that appellant would not become eligible for parole until the actual time served, *plus good conduct time*, equaled *one-fourth* of the sentence imposed, or *15 years*, whichever is less. Therefore, the trial court erred by providing the wrong instruction.

However, appellant did not object to the charge and, to require reversal, the charge error must have been egregious, creating "such harm that the defendant did not have a fair and impartial trial." *Marshall,* 479 S.W.3d at 843 (citing *Almanza,* 686 S.W.2d at 171). We discuss the four *Arrington* factors in turn.

First, we consider the entire jury charge and whether it weighs in favor or against a finding of egregious harm. The entire charge read:

> Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment, may earn time off the period of incarceration imposed through the award of good conduct time. Prison authorities may award good conduct time to a prisoner who exhibits, good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.
>
> It is also possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole. Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served plus any good conduct time earned equals one-fourth of the sentence imposed or fifteen years, whichever is less. Eligibility for parole does not guarantee that parole will be granted.
>
> It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.
>
> You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

Texas law requires the court to instruct the jury on parole law. *See* Tex. Code Crim. Proc. art. 37.07, § 4(a) (West 2015). The jury is presumed to have understood and followed the court's charge absent evidence to the contrary. *Hutch v. State*, 922

5

S.W.2d 166, 172 (Tex. Crim. App. 1996) (en banc), *overruled on other grounds by Gelinas v. State*, 398 S.W.3d 703, 710 (Tex. Crim. App. 2013). As stated above, the charge mistakenly informed the jury on appellant's parole eligibility. The charge informed the jury that it could "consider the existence of the parole law and good conduct time." However, the charge admonished the jury to refrain from considering the extent to which parole and good conduct time may be awarded to or forfeited by appellant.

Nothing in the record indicates that the jury disregarded the trial court's admonition against considering how the operation of parole might apply to appellant's term of actual imprisonment. *See Hutch*, 922 S.W.2d at 172. The jury did not send any notes to the trial court regarding parole law and good conduct time or its effect on appellant's length of incarceration, which might indicate confusion.[1] This factor appears neutral.

Second, we consider the state of the evidence, specifically, whether the jury charge error relates to a contested issue. *See Almanza,* 686 S.W.2d at 171. On appeal, appellant states the evidence was "clearly sufficient" to show that any rational finder of fact would find the appellant guilty. The error here was in the punishment charge; accordingly, in considering contested issues we will look at: the punishment sought in comparison to the punishment assessed by the jury, and any aggravating and mitigating factors the jury could have considered in assessing punishment.

The State sought a life sentence. Defense counsel sought punishment at "the lower end of the spectrum," and noted that the minimum sentence was five years. The jury sentenced appellant to life in prison. Although appellant received the maximum sentence, the state of the evidence for assessing punishment was

---

[1] The jury did, however, send a note asking about who receives the fine imposed on appellant.

exceptionally strong. *See Igo*, 210 S.W.3d at 647. Appellant offered mitigating evidence that he was 29 years old when he committed the offense, never spent time in the state penitentiary, had no prior felony convictions, and that at the time of the offense, he was not taking his psychotropic medicine. The aggravating evidence included the details of the present offense, which included testimony about the sexual assault and complainant's resulting injuries. Additionally, the jury heard a victim impact statement and about appellant's juvenile adjudications, adult convictions, his decision to cut off his ankle monitor, use marijuana while on bond, and appellant's commission of burglary of habitation four days after committing the present offense. The jury also heard testimony regarding appellant's inconsistent self-administration of his psychotropic medicine, and that he had problems whenever he discontinued his medicine. Appellant's sister's testimony established that prior family intervention was ultimately unsuccessful. Examining the entire record, the jury could have agreed to a life sentence because the evidence showed appellant had no intention to correct his behavior and little regard for court rules or the public's safety. The state of the evidence weighs against finding egregious harm.

Third, we consider the arguments of counsel. Both the State and defense counsel mentioned parole in their closing arguments. Defense counsel argued:

> [Y]ou're not supposed to consider how much time the person serves. So it's kind of an inconsistent position, but that's what [the charge] says . . . . [Y]ou can't go back and say, well, we want him to be in there for, let's say, ten years, so we're going to give him 40 years. Because there's really no way of knowing truthfully how much time he's going to do. The Parole Board, they're the ones to decide the amount of time he does. They look at the circumstances of his case, they look at his criminal history, they look at a lot of different factors and then they decide. So don't assume that just because the law says that you're eligible at a fourth of the time, you automatically walk out. Certainly you can understand for a case like this, I would be surprised.

But, again, I don't know. That's up to the Parole Board. So I just wanted to point that out to y'all.

Defense counsel discussed the erroneous instruction and referenced the jury charge's curative instruction that the jury was not to consider parole law as applied to appellant. Defense counsel also explained the curative instruction in his own words. *See Hogan v. State*, 440 S.W.3d 211, 218 (defense's closing argument mentioning parole did not weigh in favor of egregious harm finding, as it was only mentioned "to explain that the jury is not to consider the manner in which parole law might apply to appellant.").

The State argued:

What's the difference between 99 years and life? What's the difference? The difference is if you convict someone of life, they're going to get out of prison at some point, but they will never be without supervision, ever . . . . [H]e's already been convicted of other crimes. That's what he does when he's not supervised. He's going to keep committing crimes. How do you make sure? How do you make sure that your children, your children's children, your friends, your family, that they stay safe from that monster? You do exactly what his sister asks. You make sure he's under supervision, strict supervision by the Parole Board for the rest of his life. That's what you do in this case.

Appellant complains that this portion of closing argument improperly directed the jury's attention to the erroneous part of the jury charge and that the State argued in favor of a life sentence because any other sentence carried a possibility of parole. The State's explanation of the difference between life and a 99-year sentence prefaced its argument that appellant should not ever be without supervision due to the circumstances of the instant offense, his criminal history, and his post-offense bad acts. The State's position that appellant required life supervision is unrelated to the erroneous instruction regarding the calculation of good conduct time or parole eligibility. Furthermore, the State never discussed the erroneous parole eligibility

instruction. While both parties mentioned parole in closing arguments, this factor appears neutral.

In considering the final *Arrington* factor*,* we examine any other relevant information. After a careful review of the record, we find nothing additional that weighs in favor or against a finding of egregious harm.

Additionally, appellant directs us to *Hill v. State* in support of his argument that he was egregiously harmed. *See* 30 S.W.3d 505, 508 (Tex. App.—Texarkana 2000, no pet.). The trial court in *Hill*, like the trial court in this case, erroneously instructed the jury that the defendant's good conduct time would count towards time served before becoming eligible for parole. The appellate court concluded the error was egregious based solely on the incorrect language found in the charge. However, under the applicable standard, the error must also deprive the defendant of a fair and impartial trial or affect the very basis of the case, deprive the defendant of a valuable right, or vitally affect a defensive theory, i.e., "egregious harm." Indeed, the Texas Court of Criminal Appeals and this court subsequently found that erroneous parole-eligibility instructions alone did not cause egregious harm. *See Igo*, 210 S.W.3d at 647–48 (Tex. Crim. App. 2006); *Hogan,* 440 S.W.3d at 218 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd). Accordingly, *Hill* does not support a finding of egregious harm in this case.

We conclude that the factors do not support a finding of egregious harm. Therefore, we overrule appellant's two issues.

## III.    Conclusion

Accordingly, we affirm the judgment of the trial court.


/s/    Marc W. Brown
Justice


Panel consists of Justices Busby, Donovan, and Brown.
Do Not Publish — Tex. R. App. P. 47.2(b).