**Opinion issued March 14, 2017**



In The

# Court of Appeals

For The

# First District of Texas

_____

**NO. 01-16-00099-CR**

**NO. 01-16-00100-CR**

_____

**RAINIER MONTE CONLEY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 10th District Court**
**Galveston County, Texas**
**Trial Court Case No. 15CR0005 & 15CR0210**

## MEMORANDUM OPINION

The State indicted Rainier Monte Conley on two charges, unlawful possession of a firearm and assault with a deadly weapon. Conley pleaded guilty to unlawful possession of a firearm and the jury assessed a sentence of 10 years'

confinement. *See* TEX. PENAL CODE ANN. § 46.04 (West 2009). He went to trial on the assault charge. The jury found him guilty of assault with a deadly weapon and assessed a sentence of 50 years' confinement. TEX. PENAL CODE ANN. §§ 22.01, 22.02 (West 2009). The trial court ordered that the sentences run concurrently.

Conley appeals the conviction for the assault charge and the sentence for the weapons charge, contending that (1) he was egregiously harmed by charge error that failed to delineate the complainant and thus allowed for a conviction based on a verdict that was not unanimous; (2) the trial court erred in denying his motion for new trial due to the risk of a non-unanimous verdict; and (3) the trial court abused its discretion by denying Conley's motion for mistrial because a State's witness testified that Conley had rejected a plea bargain. We affirm.

### Background

Conley's aggravated assault charge arose from one of several encounters with Daryl Horton. The first incident occurred on December 14, 2014, when Horton swerved his car into Conley's lane and almost hit Conley's Dodge Charger.

The second incident occurred the next evening, when Horton and his passenger, Billy Perdue, were at a gas station. Perdue was sitting next to Horton in Horton's Buick Regal. Conley drove his Charger alongside Horton and threatened him with a gun. Horton drove away from the station. Conley followed Horton,

2

pulled up beside the passenger side of the car, where Purdue was sitting, and lowered the car's windows. Conley and his three passengers shot repeatedly at Horton's car. Conley sped away when the police arrived at Horton's location.

Although Horton and Purdue survived the shooting, Conley's intimidation of Horton continued. Sometime after the night of the shooting, Conley and his wife called Horton and threatened to kill him.

On December 30, 2014, Conley pursued Horton in a black Cadillac until chased away by the police. The police attempted to take Conley into custody, but Conley evaded them and led them on a high-speed chase, which ended when Conley abandoned the Cadillac and escaped on foot. The officers were unable to apprehend Conley. They inventoried the Cadillac and learned that it belonged to Conley's parents.

More than a year later, in August 2016, police executed a traffic stop on the black Cadillac for failure to signal. They identified Conley as the driver and arrested him pursuant to a warrant. This time, when police inventoried the Cadillac, they found a handgun, marijuana, and codeine. The State charged him with illegal possession of a firearm, and Conley pleaded guilty to that charge. *See* TEX. PENAL CODE ANN. § 46.04. The State also charged Conley with assault with a deadly weapon charge for the incident involving Horton and Perdue. At trial, Horton identified three out of the four shooters in a line-up, including Conley.

3

**Discussion**

## A. Jury Unanimity

In his first issue, Conley complains that he was egregiously harmed because the charge violated the unanimity requirement by failing to require the jury to specify one or more victims. The charge asked the jury to determine whether Conley "did then and there intentionally or knowingly threaten Daryl Wayne Horton and or Billy Eugene Perdue . . . ."

In all criminal cases, the jury must be unanimous in finding every constituent element of the charged offense. *See Jourdan v. State,* 428 S.W.3d 86, 94 (Tex. Crim. App. 2014). The unanimity requirement is violated where the jury is not required to specify one or more of the alleged victims. *See Saenz v. State*, 451 S.W.3d 388, 392 (Tex. Crim. App. 2014) (holding that unanimity requirement was violated where charge did not require jury to select specific victim from among multiple alleged victims).

We review charge error raised for the first time on appeal, as it is here, for "egregious harm." *See Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011). Charge error results in egregious harm when "it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *See Allen v. State,* 253 S.W.3d 260, 264 (Tex. Crim. App. 2008). The appellant must show actual rather than theoretical harm to support a finding of

4

egregious harm. *Cosio,* 353 S.W.3d at 777; *Villarreal v. State,* 453 S.W.3d 429, 433 (Tex. Crim. App. 2015). The Court of Criminal Appeals has noted that: "When assessing harm based on the particular facts of the case, we consider: (1) the charge; (2) the state of the evidence, including contested issues and the weight of the probative evidence; (3) the parties' arguments; and (4) all other relevant information in the record." *See Cosio*, 353 S.W.3d at 777. We address each of these issues in turn.

### 1. Charge error

The State concedes that the jury charge contained error because it permitted the jury to convict Conley for assault without identifying whether Horton or Perdue was the victim. *Saenz*, 451 S.W.3d at 392. This factor weighs in favor of finding egregious harm. *See Arrington v. State*, 451 S.W.3d 834, 841 (Tex. Crim. App. 2015) (jury instructions weighed in favor of finding egregious harm because they permitted non-unanimous verdicts).

### 2. State of the evidence

The evidence weighs against egregious harm where the defendant could not have committed one offense without committing the other. *See Jourdan*, 428 S.W.3d at 96 (finding no egregious harm where unanimity error existed but defendant could not have committed one offense without committing the other). Since Horton and Perdue were sitting next to each other in the car's front seats,

Conley could not have assaulted Perdue by knowingly discharging a firearm in his direction without simultaneously assaulting Horton. Conley argues that, since Perdue was closer to the gunmen than Horton and one of the bullets struck Perdue's seat, Horton was not threatened by the gunfire into his car. Conley proffers no evidence or authority to support this contention. The state of the evidence weighs thus against finding egregious harm.

### 3. The parties' arguments

In his closing argument, Conley relied primarily upon his wife's alibi testimony that he was not in the car during the shooting. She testified at trial that Conley was at home on the night of the shooting and that Conley had lent the Cadillac to two of his friends. Conley's wife further testified that she owned the gun found in the Cadillac and that she had placed it in the car without Conley's knowledge. But the jury manifestly rejected Conley's all-or-nothing defense, and this weighs against finding egregious harm. *See Arrington*, 451 S.W.3d at 842.

Neither Conley, the State, nor the trial court contributed to the charge error by telling the jury that it need not be unanimous. This factor weighs neither for nor against finding egregious harm. *See Arrington*, 451 S.W.3d at 844.

### 4. Other relevant information

Conley complains that some jurors might have wanted to convict Conley of assault against Perdue but to nullify any charges for assaulting Horton because

Horton had a prior drug conviction and his car had ostentatious rims. This complaint is at best speculative, and theoretical harm does not support egregious harm. *See Cosio*, 353 S.W.3d at 777.

Charge error is the only factor that weighs in favor of harm. The state-of-evidence factor weighs in favor of finding no egregious harm, and the parties' arguments and other relevant issues do not have a substantial bearing on the case. Thus, we conclude that Conley was not egregiously harmed by the charge error. *See Cosio*, 353 S.W.3d at 777–78 (finding no egregious harm where only charge error factor weighed in favor of harm); *Arrington*, 451 S.W.3d at 845 (same). Because Conley did not suffer egregious harm, the trial court did not err in denying Conley's motion for new trial.

## B. Mistrial

Next, Conley complains that the trial court erred in dismissing his motion for mistrial based on a State's witness's testimony that Conley had rejected a plea bargain. We review a trial court's denial of a motion for mistrial for an abuse of discretion. *See Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). We view the evidence in the light most favorable to the trial court's ruling, considering only those arguments before the court at the time of its ruling. *See Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004). We uphold the ruling if it was

7

within the zone of reasonable disagreement. *See Bokemeyer v. State*, 355 S.W.3d 199, 202 (Tex. App.—Houston [1st Dist.] 2011, no pet.)

A mistrial is an appropriate remedy in extreme circumstances for a narrow class of highly prejudicial and incurable errors. *See Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004); *Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000). A mistrial halts trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile. *See Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). The particular facts of the case determine whether an error requires a mistrial. *See Bokemeyer*, 355 S.W.3d at 202. Because a mistrial is an extreme remedy, a trial court should grant it "only when residual prejudice remains" after less drastic alternatives are explored. *See Barnett v. State*, 161 S.W.3d 128, 134 (Tex. App.—Fort Worth 2005), *aff'd*, 189 S.W.3d 272 (Tex. Crim. App. 2006). "Less drastic alternatives include instructing the jury 'to consider as evidence only the testimony and exhibits admitted through witnesses on the stand,' and, questioning the jury 'about the extent of any prejudice,' if instructions alone do not sufficiently cure the problem." *See Ocon*, 284 S.W.3d at 885.

Though the defendant need not request lesser remedies before moving for mistrial, when the movant fails to request a lesser remedy, we will not reverse the court's judgment if the less drastic alternative could have cured the problem. *See*

*Young v. State*, 137 S.W.3d 65, 70 (Tex. Crim. App. 2004); *see also Wood*, 18 S.W.3d at 648 (concluding that trial court did not abuse its discretion in denying defendant's motion for mistrial when defendant had not requested less drastic remedy of continuance). Jury instructions are sufficient to cure most improprieties that occur during a trial. *See Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009). We presume that a jury will follow those instructions. *Id.*; *see also Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998) (jury presumed to disregard evidence of parole status during deliberation when so instructed); *Waldo v. State*, 746 S.W.2d 750, 754 (Tex. Crim. App. 1988) (jury presumed to follow instruction to disregard testimony regarding defendant's post-*Miranda* silence); *Gardner v. State*, 730 S.W.2d 675, 696 (Tex. Crim. App. 1987) (jury presumed to follow instruction to disregard accomplice witness's testimony alluding to defendant's previous incarceration). A trial court acts within its discretion by denying a motion for mistrial if, after improper admission of a rejected plea bargain offer by the State, it instructs the jury to disregard the improperly admitted evidence. *See Keys v. State*, 05-12-01040-CR, 2013 WL 3239548, at *3 (Tex. App.—Dallas June 25, 2013, no pet.)

After the jury heard the State's witness testify that Conley rejected a plea bargain offer for 10 years, the trial court granted Conley's motion to disregard but denied his motion for a mistrial. The relevant portion of the record follows:

9

CONLEY:  Did she [Conley's wife] tell you that—did she tell you that her husband had nothing to do with this case?

HORTON:  She never did say that.  She said he was in the car.  She say—she tried to get him to tell on—Ranier [Rainier Conley] to tell on Demarcus Chachere, but he won't tell.  That's how I know that they offered Demar—I know Mr. Ranier ten years Monday.

THE COURT:  Okay.  Let's stick to the facts in questions [sic] here.

CONLEY:  Judge, I'm going to ask for the Jury to be instructed to disregard the last statement.

THE COURT:  Jury will be instructed to disregard that last statement.

CONLEY:  And just for the record, we're asking for a mistrial.

THE COURT:  Denied.  Let's stick to the facts of this case and we won't have these problems.

Because the trial court's instruction to disregard cured the error, the trial court did not abuse its discretion by denying Conley's motion for mistrial.  *See Gamboa*, 296 S.W.3d at 580; *Hawkins*, 135 S.W.3d at 77.

## Conclusion

We affirm the judgment of the trial court.


Jane Bland
Justice

Panel consists of Justices Keyes, Bland, and Huddle.

Do not publish.  TEX. R. APP. P. 47.2(b).

10