

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-19-00207-CR

SAMUEL CAMPOS, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the County Court at Law No. 4
Travis County, Texas
Trial Court No. C-1-CR-17-209306, Honorable Jon N. Wisser, Presiding

December 2, 2019

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and PARKER, JJ.

This appeal simply involves a "bear hug" and what one is. Through its charging instrument, the State accused Sam Campos of unlawfully restraining his victim by grabbing her "from behind placing her in 'bear hug' restraint." The trial court omitted the quoted passage from its jury charge, though. Instead, it described the restraint allegedly exercised by appellant as "seizing [the victim] on and about the torso with the Defendant's arms." No one objected to the variation. Eventually, the jury returned a verdict of guilty, and judgment was entered upon that verdict. Appellant now argues that the variation

"improperly expanded allegations contained in the charge," constituted charge error, and caused him egregious harm. We modify the judgment and affirm it as modified.[1]

The complaint raised is nothing more than one involving a variance between the accusation in the charging instrument and the description of the accusation in the jury charge. We assume it to be jury charge error, for purposes of this appeal. Furthermore, because appellant did not object to it at trial, the error is reversible only if egregiously harmful.

Next, error is egregiously harmful "only if [it] was fundamental in the sense that it was so egregious and created such harm that the defendant was deprived of a fair and impartial trial." *Villarreal v. State,* 453 S.W.3d 429, 433 (Tex. Crim. App. 2015). Not only is that a very difficult test to meet but also one requiring case-by-case analysis. *See Arrington v. State,* 451 S.W.3d 834, 840 (Tex. Crim. App. 2015). In determining whether the quantum of harm from the error rose to the requisite level, we consider: 1) the jury charge as a whole; 2) the evidence, including the contested issues and the weight of the probative evidence; 3) closing arguments; and 4) other relevant information from the entire record. *Id.* The purported harm at bar falls short of rising to the requisite level.

First, the jury charge included the following definition and instruction:

A person commits the offense of Unlawful Restraint if he intentionally or knowingly restrains another person.

"Restrain" means to restrict a person's movements without consent, so as to interfere substantially with the person's liberty by confining the person. Restraint is without consent if it is accomplished by force or intimidation.

Its application paragraph stated:

---

[1] Because this appeal was transferred from the Third Court of Appeals, we are obligated to apply its precedent when available in the event of a conflict between the precedents of that court and this Court. *See* TEX. R. APP. P. 41.3.

> Now, if you find from the evidence beyond a reasonable doubt that the defendant . . . did then and there intentionally or knowingly by force or intimidation, restrain [the victim], without the consent of [the victim], by restricting the movements of [the victim], to wit: by seizing [the victim] **on or about the torso with the Defendant's arms**, you will find the Defendant guilty of the offense of Unlawful Restraint, however, if you do not so find, or you have a reasonable doubt thereof, you will find the defendant not guilty.

(Emphasis supplied).

Second, a bear hug in common parlance is merely a "tight embrace" involving someone wrapping his arms around another. *See Bear Hug*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1st ed. 1976) (defining "bear hug" as a "rough tight embrace" or "a wrestling hold" where one contestant "locks his arms around the opponent's back and forces him backwards to the mat.")

Third, the prosecutor, during voir dire, told panel members that the State's burden consisted of proving that a defendant intentionally or knowingly restrained another person's liberty. Later, during opening argument, she told the jury appellant grabbed the victim with his arms and held her down on a bed.

During trial, an officer testified that the victim told him appellant "grabbed her in a bear hug." The victim testified that appellant grabbed her from behind and around her arms and body, pulled her down onto the bed, and there held her down.

During closing argument, the prosecutor told the jury that the application paragraph presented "basically what we've proved through the testimony in the trial." In turn, defense counsel's closing argument included 1) a reminder of the victim's testimony about being "bear hugged" on the bed and 2) a description of the State's burden of proof that consisted of proving "beyond a reasonable doubt whether or not [appellant] intentionally, knowing, [sic] restrained her liberty **by holding her torso**[.]" (Emphasis supplied). At no

3

time did said defense counsel draw a distinction between a "bear hug" and seizing someone about the torso.

Simply put, a "bear hug" is an embrace with one's arms about the torso of another, just as described in the jury charge. Maybe that is why no one objected to the jury charge. Indeed, appellant made no effort to explain any difference between the two descriptions in his brief, other than concluding that they were different. Furthermore, the testimony illustrated that appellant placed his victim in a "bear hug," i.e., embraced her around her torso with his arms. Given these circumstances, we find that appellant was not deprived of a fair trial by the variance in question. So, the purported error was not egregious on the record here, and we overrule appellant's contention otherwise.

Nevertheless, there is a mistake in the trial court's judgment involving appellant's name. While called "Sam Salazar Camos" in the judgment, his name appears as "Sam Campos" in the complaint, information, and jury charge.

This Court has the power to modify the judgment of the court below to make the record speak the truth when we have the necessary information to do so. TEX. R. APP. P. 43.2(b); *Bigley v. State,* 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993) (en banc). So too may we correct, *sua sponte*, whatever the trial court could have corrected by a judgment nunc pro tunc. *Asberry v. State,* 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd). This is one of those occasions.

Therefore, on our own motion, we modify the judgment to reflect appellant's name as "Sam Campos."  And, in so modifying the decree, we affirm it.

Brian Quinn
Chief Justice

Do not publish.