# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
## NO. 03-17-00042-CR
---

**Felix Sanchez-Saravia, Appellant**

**v.**

**The State of Texas, Appellee**

---
### FROM THE DISTRICT COURT OF MCCULLOCH COUNTY, 452ND JUDICIAL DISTRICT
### NO. 6075*3, HONORABLE ROBERT R. HOFMANN, JUDGE PRESIDING
---

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Felix Sanchez-Saravia of the offense of sexual assault of a child and assessed punishment at seven years' imprisonment.[1] The district court rendered judgment on the verdict and, upon the jury's recommendation, suspended imposition of the sentence and placed Sanchez-Saravia on community supervision for a period of ten years. In a single issue on appeal, Sanchez-Saravia asserts that the district court erred in failing to instruct the jury that it must agree unanimously on a particular incident of sexual assault that Sanchez-Saravia committed. We will affirm the district court's judgment.

## BACKGROUND

In a three-count indictment, the State alleged that in 2014, Sanchez-Saravia, then a 22-year-old Brady police officer, engaged in sexual intercourse with S.F., then a 16-year-old girl, on

---

[1] *See* Tex. Penal Code § 22.011(a)(2).

three occasions—on or about April 1 (count 1), May 1 (count 2), and September 5 (count 3). Although these were the only dates alleged in the indictment, S.F. testified that she and Sanchez-Saravia had sex approximately two or three times per week beginning in April 2014 and continuing through May 2015, by which time she had turned 17 years of age.[2] Sanchez-Saravia, who testified in his defense, admitted that he had sex with S.F. on one night in May 2015 but denied having sex with S.F. at any time when she was younger than 17. After considering this and other evidence, which we discuss in more detail below, the jury acquitted Sanchez-Saravia of committing the offenses alleged in counts 1 and 2 of the indictment but found him guilty of committing the offense alleged in count 3. The jury assessed punishment at seven years' imprisonment and recommended that Sanchez-Saravia be placed on community supervision, as noted above. The district court rendered judgment on the verdict, and this appeal followed.

## STANDARD OF REVIEW

We review claims of jury-charge error under the two-pronged test set out in *Almanza v. State*.[3] "Our first inquiry is whether the jury charge contained error."[4] "If error exists, we then analyze the harm resulting from the error."[5] "If the error was preserved by objection,

---

[2] Specifically, the record reflects that S.F. turned 17 on November 28, 2014. The sexual-assault statute defines a "child" as a person younger than 17 years of age. *See id*. § 22.011(c)(1).

[3] 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g).

[4] *Price v. State*, 457 S.W.3d 437, 440 (Tex. Crim. App. 2015).

[5] *Id*.

2

any error that is not harmless will constitute reversible error."[6] "If the error was not preserved by objection, the error will not result in reversal of the conviction without a showing of egregious harm."[7]

## ANALYSIS

**Unanimity instruction**

In his sole issue on appeal, Sanchez-Saravia asserts that the district court erred in failing to instruct the jury that it needed to agree unanimously on a particular incident of sexual assault that Sanchez-Saravia committed. "Texas law requires that a jury reach a unanimous verdict about the specific crime that the defendant committed."[8] "In other words, 'the jury must be unanimous in finding every constituent element of the charged offense in all criminal cases.'"[9] "This means that the jury must 'agree upon a single and discrete incident that would constitute the commission of the offense alleged.'"[10]

---

[6] *Id*.

[7] *Id*.

[8] *Cosio v. State*, 353 S.W.3d 766, 771 (Tex. Crim. App. 2011) (citing *Landrian v. State*, 268 S.W.3d 532, 535 (Tex. Crim. App. 2008)); *see Hodge v. State*, 500 S.W.3d 612, 624 (Tex. App.—Austin 2016, no pet.).

[9] *Hodge*, 500 S.W.3d at 624 (quoting *Jourdan v. State*, 428 S.W.3d 86, 94 (Tex. Crim. App. 2014)).

[10] *Id*. (quoting *Stuhler v. State*, 218 S.W.3d 706, 717 (Tex. Crim. App. 2007)).

"[N]on-unanimity may occur when the State charges one offense and presents evidence that the defendant committed the charged offense on multiple but separate occasions."[11] "Each of the multiple incidents individually establishes a different offense or unit of prosecution."[12] "The judge's charge, to ensure unanimity, would need to instruct the jury that its verdict must be unanimous as to a single offense or unit of prosecution among those presented."[13] In other words, "'the jury must be instructed that it must [agree] unanimously [] on one incident of criminal conduct (or unit of prosecution), based on the evidence, that meets all of the essential elements of the single charged offense beyond a reasonable doubt.'"[14]

Here, the application paragraph of the court's charge that corresponded to count 3 of the indictment instructed the jury as follows:

> Now, if you find from the evidence beyond a reasonable doubt that on or about the September 5, 2014, in McCulloch County, Texas, the defendant, Felix Sanchez-Saravia, did intentionally or knowingly cause the penetration of the sexual organ of Juvenile 1 (a pseudonym), a child, by defendant's sexual organ, then you will find the defendant guilty of sexual assault of a child as charged in the indictment.
>
> You are instructed that the time of the offense mentioned must be some date anterior to the presentment of the indictment. The indictment in this case was presented on August 24, 2015.

---

[11] *Cosio*, 353 S.W.3d at 772 (citing *Ngo v. State*, 175 S.W.3d 738, 747 (Tex. Crim. App. 2005)).

[12] *Id*.

[13] *Id*.

[14] *Saenz v. State*, 451 S.W.3d 388, 390 (Tex. Crim. App. 2014) (quoting *Cosio*, 353 S.W.3d at 776).

4

If you do not so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will find the defendant not guilty.[15]

There was nothing in the charge instructing the jury that before finding Sanchez-Saravia guilty, it must agree unanimously on a single incident of sexual assault, even though the State presented evidence that Sanchez-Saravia had engaged in sexual intercourse with S.F. on separate but multiple occasions. The Court of Criminal Appeals has held that the omission of such an instruction from the charge is erroneous because it allows for the possibility of a non-unanimous verdict.[16] Consistent with this and other precedent in similar cases, we conclude that the district court erred in failing to instruct the jury that it must agree unanimously on a particular incident of sexual assault.[17]

**Harm analysis**

Sanchez-Saravia did not object to the charge. Therefore, "reversal here is proper only if the record indicates the existence of egregious harm."[18] "Charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a

---

[15] The application paragraphs that corresponded to counts 1 and 2 of the indictment, of which Sanchez-Saravia had been acquitted, were worded similarly.

[16] *See Cosio*, 353 S.W.3d at 772–74.

[17] *See id.*; *Francis v. State*, 36 S.W.3d 121, 125 (Tex. Crim. App. 2000) (op. on reh'g); *Ashton v. State*, 526 S.W.3d 490, 499–500 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd); *Flores v. State*, 513 S.W.3d 146, 155–56 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd); *see also Hopkins v. State*, No. 03-16-00746-CR, 2018 Tex. App. LEXIS 2467, at *22–24 (Tex. App.—Austin Apr. 6, 2018, no pet. h.) (mem. op., not designated for publication).

[18] *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015) (citing *Almanza*, 686 S.W.2d at 171).

defensive theory."[19]   In this case, "[i]f the charge error caused the jury, in fact, to render a less-than-unanimous verdict on an issue on which unanimity is required, the charge error is egregiously harmful."[20]  "Egregious harm is a 'high and difficult standard' to meet, and such a determination must be 'borne out by the trial record.'"[21]  "In examining the record to determine whether charge error has resulted in egregious harm to a defendant, we consider (1) the entirety of the jury charge, (2) the state of the evidence, including the contested issues and weight of probative evidence, (3) the arguments of counsel, and (4) any other relevant information revealed by the trial record as a whole."[22]  The analysis "is fact specific and is done on a 'case-by-case basis.'"[23]

### *The entirety of the charge*

The jury charge contained the following general unanimity instructions:

After argument of counsel, you will retire to the jury room, select your own presiding juror and proceed with your deliberations.  After you have reached a unanimous verdict the presiding juror will certify thereto by filling in the appropriate forms attached to this charge and signing his or her name as presiding juror.

. . . .

---

[19] *Id*.

[20] *Swearingen v. State*, 270 S.W.3d 804, 812 (Tex. App.—Austin 2008, pet. ref'd) (citing *Ngo*, 175 S.W.3d at 750–52).

[21] *Villarreal*, 453 S.W.3d at 433 (quoting *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013)).

[22] *Id*. (citing *Almanza*, 686 S.W.2d at 171).

[23] *Arrington v. State*, 451 S.W.3d 834, 840 (Tex. Crim. App. 2015) (quoting *Gelinas v. State*, 398 S.W.3d 703, 710 (Tex. Crim. App. 2013)).

In order to return a verdict, each juror must agree to that verdict, but jurors have a duty to consult each other and to deliberate with a view to reaching unanimous agreement, if that can be done without violence to individual judgment.

. . . .

After you retire to the jury room, you are to select one of your members as your presiding juror. It is the duty of the presiding juror to preside over your deliberations, to vote with you, and to certify your verdict by signing the appropriate verdict form when you have unanimously agreed upon a verdict.

"Generic statements regarding unanimity," similar to the above, have been found in other cases to be "insufficient to prevent a non-unanimous verdict."[24] This is because "the jury could have understood [the instructions] to mean that they had to be unanimous about the offense in general, not a particular incident comprising the offense."[25]

The jury charge also contained the following extraneous-offense instruction:

In this case evidence has been introduced to the effect that there are alleged acts of sexual misconduct between the defendant and the complainant, other than those alleged in the indictment. The State has identified the specific instances, if any, on which it is relying to substantiate the allegations in the indictment. Evidence of any other alleged acts is not to be considered unless you believe these acts were committed beyond a reasonable doubt. With regard to those other acts, if any, you are instructed that said evidence was admitted only for the purpose of showing the state of mind of the defendant and the child and the previous and subsequent relationship between the defendant and the child, if it does and for no other purpose.

As the State observes, this instruction likely "narrowed and channeled the jury's consideration to the specific dates alleged" in each count of the indictment, thereby reducing the risk that the jury would

---

[24] *See, e.g., Arrington*, 451 S.W.3d at 841; *Cosio*, 353 S.W.3d at 773–74; *Flores*, 513 S.W.3d at 158.

[25] *Cosio*, 353 S.W.3d at 773.

reach a non-unanimous verdict.[26]  Nevertheless, the instruction did not inform the jury that it must agree unanimously on a single incident of sexual assault that constituted the charged offense.  Nor was there anything else in the charge that instructed the jury that it must agree unanimously on "the particular incident comprising the offense."[27]  We conclude that the first factor weighs in favor of a finding of egregious harm.

### State of the evidence

"[U]nder this prong of an egregious harm review, we look to the state of the evidence to determine whether the evidence made it more or less likely that the jury charge caused appellant actual harm."[28]  Sanchez-Saravia places significance on S.F.'s testimony that she had sex with Sanchez-Saravia approximately two or three times per week for several months prior to her seventeenth birthday.  According to Sanchez-Saravia, this evidence made it more likely that the jury did not agree unanimously on a single incident of sexual assault.  However, the record also reflects that the State elicited testimony from S.F. tending to show that, among the many times she claimed to have had sex with Sanchez-Saravia prior to her seventeenth birthday, S.F. remembered certain details of three occasions in particular, each corresponding to the dates alleged in the indictment:

> Q.  Okay.  I have explained to you that we have placed certain on-or-about dates in the indictment.  You and I had talked about that.

---

[26] *See Hodge*, 500 S.W.3d at 626 & n.9 (noting that extraneous-offense instruction in similar case reduced risk of jury reaching non-unanimous verdict as to particular incident alleged).

[27] *See Cosio*, 353 S.W.3d at 773; *see also Arrington*, 451 S.W.3d at 841.

[28] *Arrington*, 451 S.W.3d at 841.

8

A.      Yes.

. . . .

Q.      We've alleged on or about April 1st, 2014, based on texts and so forth.[29] Is it fair to state that you and Felix Sanchez were having sexual intercourse on or about April 1st, 2014?

A.      Yes.

Q.      Okay. There is also an allegation of May 1st, 2014, and I think there's been discussion about trying to remember events.

A.      It was prom night.

Q.      Prom night. Okay. So would it be fair to say that you and Felix Sanchez had sexual intercourse May 1st, 2014?

A.      Yes.

Q.      How does prom night relate to that?

A.      He was a cop that was working prom, and I went over there after.

Q.      Okay. Did you talk to him about it at the prom?

A.      No.

Q.      Okay. How did you know that it was safe to go over there after the prom?

A.      He—his cop light. I want to say it was his cop light, but I don't remember.[30]

Q.      You don't remember, but you don't have any doubt that you—

A.      Yes.

---

[29] Numerous text messages that were exchanged between S.F. and Sanchez-Saravia, beginning in April 2014, were admitted into evidence.

[30] S.F. testified that she would meet Sanchez-Saravia at his house to have sex late at night and that Sanchez-Saravia would signal to her that it was "safe" for her to come over by placing a spotlight on the top of his patrol car.

Q. —went over there after the prom?

A. No.

. . . .

Q. Is it fair to say you had sexual intercourse with Felix Sanchez September 5th, 2014?

A. Yes.

Q. All right. And how do you remember that date that it's an on-or-about date?

A. Because it was the only home football game that year.

Q. Okay. Home football game. Does it have anything to do with band?

A. Yes. I was in the band.

Q. Okay. And how does the meeting with Felix Sanchez relate to the home football game?

A. I want to say he was maybe there, but if not it was his cop light.

Thus, although there was evidence tending to show that S.F. and Sanchez-Saravia had sex on numerous occasions, the State also presented more specific evidence of the three occasions alleged in the indictment. Based on this evidence, the jury could have found unanimously that Sanchez-Saravia had engaged in sexual intercourse with S.F. "on or about" September 5, 2014, as alleged in count 3 of the indictment.

We also observe that the defensive theory of the case was that Sanchez-Saravia had engaged in sexual intercourse with S.F. on only one night in May 2015, after she had already turned 17 years of age, and that he had not had sex with her on any other occasion. The record reflects that

10

throughout Sanchez-Saravia's cross-examination of S.F., defense counsel asked S.F. questions implying that she was fabricating almost all of her sexual history with Sanchez-Saravia, not that she was mistaken as to the particular occasions on which she had engaged in sexual intercourse with him. Thus, the contested issue in the case was not the specific date or dates on which Sanchez-Saravia had allegedly engaged in sexual intercourse with S.F., but whether Sanchez-Saravia had engaged in sexual intercourse with S.F. on any date at all prior to her seventeenth birthday. The State presented evidence that he had, and the jury, by its guilty verdict in count 3 of the indictment, chose to believe at least some of that evidence. If it had not, the jury would have acquitted Sanchez-Saravia of all charges.[31] We conclude that this factor weighs against a finding of egregious harm.

### *The arguments of counsel*

"Under this factor, we look to whether any statements made by the State, appellant, or the court during the trial exacerbated or ameliorated error in the charge."[32] For example, in *Ngo v. State*, the jury was informed by both the trial court during voir dire and the State during voir dire and in closing arguments that the jury's verdict need not be unanimous.[33] No such statements were

---

[31] *See Arrington*, 451 S.W.3d at 843–44. Sanchez-Saravia asserts that because the jury acquitted him of counts 1 and 2 of the indictment, "the jury did not wholly believe" either the complainant or the defendant and "appears to have landed on some sort of middle ground." However, the jury's not-guilty findings in counts 1 and 2 do not establish that the jury failed to reach a unanimous verdict on count 3. Instead, as the State observes, "by rejecting counts 1 and 2, the jury indicated that it was not [persuaded] unanimously [] beyond a reasonable doubt that sexual relations occurred on [or about] April 1, 2014 or May 1, 2014; but it was [persuaded] unanimously [] that sexual relations did occur on [or about] September 5, 2014."

[32] *Id*. at 844.

[33] 175 S.W.3d at 750–51.

made in this case.  On the contrary, during voir dire, the district court informed the venire that "[t]he verdict of a jury in a criminal case must be unanimous, that is all 12 jurors must agree."  In their opening and closing statements, neither the State nor the defense discussed the unanimity requirement.  However, in its closing argument, the State emphasized the dates alleged in the indictment:

> So, yes, we're looking at what happened in April, May, and September.  Those are the dates the State has alleged in the Indictment, and we've explained why those dates have been alleged in this Indictment.
>
> . . . .
>
> [S.F.'s] testimony is she sat up here and told you what happened in April before the meeting with Chief Derrick.  She was clear about that.  She was clear about having sex on prom.  Prom is in May.  And she was clear about sex that happened in September.  Those are the dates that the State wants you to focus on.
>
> . . . .
>
> So for each one of those dates—and you'll have to refer back to Count One here that is April the 1st, Count Two is May the 1st, and Count Three is in September of 2014.  Those are the three dates that the State is asking you to go back and find the Defendant guilty of sexual assault of a child.

This argument ameliorated the charge error by drawing the jury's attention to the particular incidents of sexual assault on which the jury's verdict needed to be unanimous.  We conclude that this factor weighs against a finding of egregious harm.

### *Any other relevant information revealed by the record of the trial as a whole*

Finally, the record reflects that after the jury had concluded its deliberations on guilt / innocence, the following occurred:

| [The court]: | Thank you. Please be seated. For the record, please let the record reflect that the jury is back in the courtroom at this time, that Counsel and the Defendant are present as well. [Jury foreman], my understanding is that the jury has reached a verdict in all three counts in this case; is that correct? |
| --- | --- |
| [Jury foreman]: | Yes, sir. |
| [The court]: | All right. And is the verdict that you reached in all three counts unanimous? |
| [Jury foreman]: | Yes, sir. |

There is nothing in the record to suggest that, contrary to the foreman's representation, the jury was unable to reach a unanimous verdict. We conclude that this factor weighs against a finding of egregious harm.

In summary, of the four factors, only the first weighs in favor of a finding of egregious harm, and the other three factors weigh against such a finding. Accordingly, on this record, we cannot conclude that Sanchez-Saravia suffered anything more than theoretical harm from the charge error.

We overrule Sanchez-Saravia's sole issue on appeal.

### CONCLUSION

We affirm the district court's judgment of conviction.

_____
Bob Pemberton, Justice

13

Before Chief Justice Rose, Justices Pemberton and Goodwin

Affirmed

Filed:   June 20, 2018

Do Not Publish