

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-18-00179-CR

———————————————

VICTOR ORTIZ GONZALEZ, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 432nd District Court
Tarrant County, Texas
Trial Court No. 1497894D

Before Gabriel, Kerr, and Pittman, JJ.
Memorandum Opinion by Justice Gabriel

## MEMORANDUM OPINION

Appellant Victor Ortiz Gonzalez appeals from his convictions for aggravated assault against a public servant and for evading arrest or detention. He argues that his aggravated-assault conviction was supported by insufficient evidence and that the jury charge egregiously harmed him because it instructed the jury on a culpable mental state that was not alleged in the indictment. Finally, Appellant asserts that his $10,000 fine assessed for evading arrest must run concurrently with the $10,000 fine assessed for assault; thus, the order to withdraw funds incorporated into the evading judgment may only authorize withdrawal of one of the fines, not both. We conclude that the jury-charge error egregiously harmed Appellant and reverse the aggravated-assault judgment for further proceedings. Based on this holding we need not address Appellant's fine complaint, and we affirm the trial court's judgment convicting Appellant of evading arrest or detention.

## I.  BACKGROUND

### A.  THE OFFENSES

Officers Taylor Rogers and Craig Chambers were dispatched to locate a vehicle that had stolen merchandise inside. The merchandise, which was equipped with a tracking device, had been placed in a "bait" car by the police and then was stolen.[1] Rogers and Chambers quickly located the vehicle—a yellow Hummer—based on the

---

[1]Only the merchandise was stolen, not the bait car.

2

merchandise's tracking device. After seeing the Hummer roll through a stop sign, Chambers turned on the patrol car's roof lights and initiated a traffic stop. The Hummer accelerated, "dust flying," after turning into an apartment complex's parking lot. One person in the parking lot had to run to get away from the Hummer. Chambers, who was driving the patrol car, sped after the Hummer. The Hummer sped to a locked gate and stopped. Chambers drove the patrol car to the driver's side of the Hummer, stopping the front of the patrol car close to and even with the Hummer's front bumper to keep the driver from getting out of the Hummer. Another officer, Kendall Harris, drove his patrol car close to and even with the passenger side of the Hummer. Harris saw Rogers put his right leg outside his patrol car to get out. The Hummer accelerated and began to reverse, pinning Rogers between the patrol car and the Hummer. Chambers yelled to alert Rogers that the Hummer was moving. Before Rogers could react, the driver of the Hummer looked in the rearview mirror, continued to accelerate, and reversed away from both patrol cars, damaging both. While the Hummer was reversing, Rogers can be heard on the dashboard video saying, "Ow, my leg." The Hummer also hit "several" other cars in the complex parking lot. Chambers and Rogers ran after the Hummer, but had to stop after Rogers's leg, elbow, and chest pain became severe. Harris saw the Hummer crash into a structure and saw the driver run away.

Fingerprints from the Hummer were matched to Appellant. Rogers was able to identify Appellant from a photo array as the driver of the Hummer. After a

warrant was issued, Appellant was arrested. The investigating detective interviewed Appellant, and after first denying any involvement, Appellant admitted he was the driver of the Hummer. He also admitted that "he knew exactly where the officers' cars were at and that they were police officers behind him and around him, especially when he put . . . the Hummer into reverse." When the investigating detective told Appellant that an officer had been hurt after Appellant pinned him between the patrol car and the Hummer, Appellant cried.

## B. INDICTMENT AND TRIAL

Appellant was indicted with the first-degree felony of aggravated assault of a public servant with a deadly weapon—the Hummer—and with the third-degree felony of evading arrest or detention with a vehicle—again, the Hummer.[2] *See* Tex. Penal Code Ann. §§ 22.02, 38.04 The indictment alleged that Appellant used the Hummer as a deadly weapon and contained a repeat-offender notice, alleging that Appellant had been convicted in 2005 of possessing one gram or more but less than four grams of methamphetamine—a third-degree felony. *See id.* § 12.42(a), (c)(1); Tex. Health & Safety Code Ann. § 481.115(c).

A jury found Appellant guilty of aggravated assault of a public servant with a deadly weapon, found Appellant guilty of evading arrest or detention, found that the deadly-weapon allegation regarding evading arrest or detention had been proved

---

[2]The indictment contained other counts arising from the same criminal episode; but these two counts were the only ones the State took to trial.

4

beyond a reasonable doubt, found that the repeat-offender notice was true,[3] and assessed his punishment at 45 years' confinement for assault and at 20 years' confinement for evading arrest or detention. The jury also assessed a $10,000 fine for each offense. The trial court entered judgments in accordance with the jury's verdicts, ordering the sentences to run concurrently. *See* Tex. Penal Code Ann. § 3.03(a). The incorporated order to withdraw funds authorized withdrawals from Gonzalez's inmate trust account for "[c]ourt costs, fees and/or fines and/or restitution . . . in the amount of $20,319."[4]

Appellant filed a motion for new trial, arguing that "the verdict is contrary to the law and the evidence." *See* Tex. R. App. P. 21.3(h). The motion was deemed denied. *See* Tex. R. App. P. 21.8(c).

## II.  SUFFICIENCY OF THE EVIDENCE: AGGRAVATED ASSAULT

In his second point, Appellant argues that the evidence was insufficient to support a finding that he intentionally or knowingly committed aggravated assault. Appellant was charged with the intentional or knowing aggravated assault on a public servant—Rogers—while using a deadly weapon, which is a result-oriented offense. *See* Tex. Penal Code Ann. § 22.02(a), (b)(2)(B); *Shelby v. State*, 448 S.W.3d 431, 439

---

[3]Appellant had pleaded true to the repeat-offender notice, and the trial court instructed the jury to find the notice true.

[4]The assault judgment noted that Gonzalez was responsible for $319 in court costs.

(Tex. Crim. App. 2014). A person acts intentionally with respect to the result of his conduct when it is his conscious objective or desire to cause the result. *See* Tex. Penal Code Ann. § 6.03(a). A person acts knowingly with respect to his conduct's result if he is aware that his conduct is reasonably certain to cause the result. *See id.* § 6.03(b). Appellant argues that even if Rogers's attempt to get out of the patrol car was obvious, no evidence shows Appellant "either intended to cause bodily injury or knew his actions were likely to result in bodily injury to . . . Rogers." Appellant asserts that his obvious intent was to escape, not to injure Rogers. And he posits that it may be reasonably inferred from the evidence that he could not have expected Rogers to get out of the patrol car and was not aware that Rogers had been pinned between the patrol car and the Hummer.

In our due-process review of the sufficiency of the evidence to support Appellant's aggravated-assault conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016). The trier of fact—here, the jury—is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Blea v. State*, 483 S.W.3d 29, 33 (Tex. Crim. App. 2016). Thus, we may not substitute our judgment for the jury's by re-evaluating those implicit findings. *See Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). Instead, we determine whether the necessary inferences are

6

reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). We must presume that the jury resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Id.* at 448–49; *see Blea*, 483 S.W.3d at 33.

Appellant admitted that he drove the Hummer and that he did not pull over when the patrol car tried to pull him over. Instead, he drove through the complex's parking lot at a high rate of speed to avoid arrest or detention and when he reached a dead end, he put his car in reverse and accelerated into both patrol cars that had tried to block him in. Appellant acknowledged that he knew the cars were police cars and that they were on either side of the Hummer when he reversed into them. Rogers was pinned between his patrol car and the Hummer, injuring his right leg, his right elbow, and his chest, which required medical treatment. When Appellant began to accelerate away, Rogers can be heard on the dashboard video saying that his leg was hurt. After crashing the Hummer, Appellant admitted he jumped out and ran away.

This evidence, viewed in the light most favorable to the verdict, allowed the jury to rationally infer that it was Appellant's conscious objective or desire to cause the result or that he was aware that his conduct was reasonably certain to cause the result. *See, e.g.*, *Onyinyechi v. State*, No. 01-16-00551-CR, 2017 WL 3027665, at *3–4 (Tex. App.—Houston [1st Dist.] July 18, 2017, pet. ref'd) (mem. op., not designated for publication); *Dominique v. State*, No. 01-09-00385-CR, 2010 WL 1571180, at *3–5 (Tex. App.—Houston [1st Dist.] Apr. 8, 2010, pet. ref'd) (mem. op., not designated

7

for publication); *Mayfield v. State*, Nos. 09-07-005 CR, 09-07-006 CR, 09-07-007 CR, 2008 WL 4936889, at *4–5 (Tex. App.—Beaumont Nov. 19, 2008, no pet.) (mem. op., not designated for publication). Contrary to Appellant's arguments, we cannot credit inferences that the jury obviously did not nor can we ignore inferences that the jury implicitly drew. *See Murray*, 457 S.W.3d at 448–49; *see also Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995) (recognizing jury may infer intent from defendant's words, acts, and conduct). A rational fact-finder could have found beyond a reasonable doubt that Appellant knew the police officers were intent on apprehending him and, out of necessity, would step out of their patrol cars after blocking his Hummer in. The fact-finder could have found beyond a reasonable doubt that Appellant acted intentionally or knowingly in injuring Rogers by reversing and accelerating into the patrol cars, knowing that they were there. We overrule Appellant's second point.

## III. JURY-CHARGE ERROR: AGGRAVATED ASSAULT

In his first point, Appellant recognizes that he did not object to the jury charge and argues that he was egregiously harmed by the trial court's inclusion of a mental state that was not included in the aggravated-assault indictment—recklessness. The State "acknowledges that a trial court improperly broadens an indictment by including the reckless culpable mental state when the indictment just alleges the intentional and knowing culpable mental states even though the aggravated assault statute permits conviction based on reckless conduct." Indeed, the indictment alleged the culpable

mental states of intentionally and knowingly, but the charge additionally instructed the jury on recklessness in the abstract and application paragraphs regarding aggravated assault. Accordingly, both Appellant and the State focus on whether Appellant suffered egregious harm, which is the appropriate standard for jury-charge error that was not objected to. *See* Tex. Code Crim. Proc. Ann. art. 36.19; *Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013).

To make this fact-specific determination, we consider the entire charge; the state of the evidence, including contested issues and the weight of the probative evidence; the parties' jury arguments, including any statements made to the jury by the State, Appellant's counsel, or the trial court during trial; and any other relevant information in the record. *See Arrington v. State*, 451 S.W.3d 834, 840, 844 (Tex. Crim. App. 2015); *Gelinas v. State*, 398 S.W.3d 703, 710 (Tex. Crim. App. 2013); *Taylor v. State*, 332 S.W.3d 483, 489–90 (Tex. Crim. App. 2011); *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996); *see also* Tex. Code Crim. Proc. Ann. art. 36.19. We look not for theoretical harm but for actual harm. *See Arrington*, 451 S.W.3d at 840, 844; *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011). Egregious harm is a "high and difficult standard" to meet, and such a determination must be "borne out by the trial record." *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015).

## A. THE ENTIRE JURY CHARGE

In the abstract portion of the charge, the trial court defined intentional and knowing, but also defined recklessness. The abstract charge instructed that a person

9

commits aggravated assault of a public servant if the person acts intentionally, knowingly, or recklessly. In the application paragraph, the charge again included recklessly along with intentionally and knowingly as applicable culpable mental states. *Cf. Medina v. State*, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999) ("Where the application paragraph correctly instructs the jury, an error in the abstract instruction is not egregious."); *Hughes v. State*, 897 S.W.2d 285, 296 (Tex. Crim. App. 1994) (holding court "may consider the degree, if any, to which the culpable mental states were limited by the application portions of the jury charge"). In sum, the charge authorized the jury to convict Appellant on a lesser culpable mental state than that with which he was charged, lowering the State's burden of proof. Nothing in the charge, such as the application paragraph for the offense at issue, lessened the effect of the error. This factor weighs in favor of egregious harm. *See Limon v. State*, No. 03-10-00666-CR, 2012 WL 5392160, at *3 (Tex. App.—Austin Nov. 2, 2012, no pet.) (mem. op., not designated for publication).

## B. THE STATE OF THE EVIDENCE

As we discussed above, the evidence supported Appellant's guilt of either knowing or intentional conduct with respect to the result of his actions. *See Mabry v. State*, Nos. 02-13-00066-CR, 02-13-00067-CR, 2014 WL 4463117, at *6–7 (Tex. App.—Fort Worth Sept. 11, 2014, pet. ref'd) (mem. op., not designated for publication); *Rivera v. State*, 12 S.W.3d 572, 577 (Tex. App.—San Antonio 2000, pet. ref'd). Importantly, Appellant admitted that he knew police officers were trying to

10

pull him over, that he sped off, and that he crashed into the police cars after he hit a dead end. *See Faulkenberry v. State*, No. 03-18-00265-CR, 2018 WL 3625791, at *5 (Tex. App.—Austin July 31, 2018, pet. ref'd) (mem. op., not designated for publication); *Russell v. State*, No. 05-00-01978-CR, 2002 WL 59264, at *6 (Tex. App.—Dallas Jan. 16, 2002, pet. ref'd) (not designated for publication). This factor weighs against egregious harm.

## C. STATEMENTS TO THE JURY

During voir dire, the prosecutor argued that it had to prove that Appellant committed aggravated assault of a public servant intentionally, knowingly, or recklessly, but "[n]ot all three." He stressed to the venire that it could find Appellant guilty if it believed "he, at the most, intentionally or at the very least recklessly" committed the aggravated assault. The prosecutor defined "reckless" and then asked the venire what a driver could do that would equate to recklessness—consciously disregarding the likelihood of the result of the driver's conduct. *See* Tex. Penal Code Ann. § 6.03(c). At the end of several hypotheticals about reckless driving, the prosecutor asked if recklessness would "not [be] enough" for any of the veniremembers; several indicated that they were "good on reckless." However, Appellant's counsel also discussed recklessness in the context of driving, pointing out that almost any action done while driving could be considered reckless.

Before opening arguments, the prosecutor read the indictment to the jury and correctly read the two indicted culpable mental states—intentionally or knowingly.

11

Recklessly was not mentioned. During his opening statement to the jury, Appellant's counsel stated that a "key element" of the State's case was whether the offense had been committed "intentionally, knowingly or reckless[ly]." However, the prosecutor argued to the jury in her opening statement that the evidence would show Appellant "intentionally uses his vehicle to commit assault against Officer Rogers that night."

That same prosecutor, in her closing argument, repeatedly mentioned recklessness as a culpable mental state that the jury was authorized to consider along with intentionally and knowingly:

> There are three state-of-mind requirements that are within aggravated assault of a public servant. You-all don't have to agree on the same state of mind. For example, four of you may decide that this defendant was reckless on April 24th, 2017. And reckless is defined basically as the Defendant is aware of a fact but consciously disregards that fact in his actions.
>
> . . . .
>
> You heard testimony that the Defendant was reckless in the way he drove his vehicle through that apartment complex, and he was reckless in reversing it into Officer Chambers' and Rogers' patrol vehicle and Officer Harris who testified as well. The four of you – four out of the twelve may decide the Defendant was reckless.
>
> Four of you may decide that the defendant acted knowingly in the aggravated assault on April 24th, 2017. The knowingly state of mind requirement is basically that the Defendant was aware his conduct was reasonably certain to cause a result and he disregarded that.
>
> The evidence we have for knowingly is really by the defendant's own admission . . . that the police officers had parked behind him so close that he was unable to move.
>
> . . . .

12

Four of you can decide the Defendant acted knowingly. The other four can decide the Defendant acted intentionally. There is sufficient evidence for that as well beyond a reasonable doubt. . . .

. . . .

That's your intentionally state of mind. You all 12 don't have to agree on the same state of mind requirement.

The prosecutor further argued that the jury could convict Appellant of aggravated assault of a public servant if it found one of the three culpable mental states and stated that Appellant had been reckless by putting his car in reverse.

In Appellant's closing argument to the jury, counsel asserted that neither intentional nor knowing "fits in there" because Appellant did not "intend to hit that officer." Appellant's counsel further stated that "it [was] a reckless act to start to pull the car back." The second prosecutor, in his closing jury argument, mentioned the three culpable mental states, including recklessness, and argued that Appellant's conduct was "an intentional act" and "in the very least, knowingly is there." But he continued and asserted that evidence showing Appellant was "reckless is overwhelming."

We conclude that recklessness was repeatedly mentioned as an applicable culpable mental state, co-equal with intentional or knowing conduct. The State stressed recklessness as an alternative theory if the jury could not find intentional or knowing conduct. This factor weighs in favor of an egregious-harm finding. *See Kuhn*

13

*v. State*, 393 S.W.3d 519, 530–31 (Tex. App.—Austin 2013, pet. ref'd); *Limon*, 2012 WL 5392160, at *3–4.

## D. Other Relevant Information

Neither the State nor Appellant points to any other record information relevant to our harm analysis; but courts have considered things such as the jury's rejection of a charged count and whether the jury sent clarification requests during their deliberations. *See Flores v. State*, 513 S.W.3d 146, 161 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). The jury convicted Appellant of both counts it considered and sent no clarification requests during its guilt deliberations. This factor is neutral.

## E. Summary of Harm Determination

As we recognized earlier, egregious harm is a high hurdle to clear. *See Villarreal*, 453 S.W.3d at 433. Only if a jury-charge error affects "the very basis of the case, deprives the defendant of a valuable right [such as the right to a fair and impartial trial], or vitally affects a defensive theory" may we declare that egregious harm occurred. *State v. Ambrose*, 487 S.W.3d 587, 597 (Tex. Crim. App. 2016); *Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. 2016).

The charge here was erroneous by including, defining, and applying a non-indicted culpable mental state for aggravated assault of a public servant. Both the State and Appellant argued the meaning and application of recklessness to the jury. The State argued that Appellant's actions were intentional and knowing but also that they were reckless. And after having questioned the venire during voir dire if the

14

members could be "good" with reckless, the State argued to the jury in closing argument that the individual jurors did not have to agree on the culpable mental state (including recklessness) each believed had been proven. *Cf. Starks v. State*, No. 05-07-00944-CR, 2008 WL 4981633, at \*2 (Tex. App.—Dallas Nov. 25, 2008, pet. ref'd) (mem. op., not designated for publication) (finding no egregious harm after non-indicted mental state of recklessness was charged because "[r]ecklessness was not discussed at voir dire or in closing argument at guilt/innocence" and because "[t]here was no evidence that appellant acted recklessly during the incident").

Although the evidence supported Appellant's conviction under the charged mental states of intentionally or knowingly, the charge itself and the tenor of the trial lowered the State's burden to prove Appellant guilty beyond a reasonable doubt of the indicted offense. *Brown v. State*, No. 04-03-00009-CR, 2004 WL 383342, at \*6 (Tex. App.—San Antonio Mar. 3, 2004), *pet. dism'd*, No. PD-0701-04, 2005 WL 1398609 (Tex. Crim. App. June 15, 2005) (per curiam) (not designated for publication). This deprived Appellant of a fair trial. We conclude that Appellant was egregiously harmed by the inclusion of recklessness in the charge as an applicable culpable mental state. *See Uddin v. State*, 503 S.W.3d 710, 717–22 (Tex. App.—Houston [14th Dist.] 2016, no pet.); *Riley v. State*, 447 S.W.3d 918, 928–30 (Tex. App.—Texarkana 2014, no pet.); *Limon*, 2012 WL 5392160, at \*2–4; *Brown*, 2004 WL 383342, at \*5–6.

## IV. CONCLUSION

We conclude that the evidence was sufficient to support the jury's verdict that Appellant intentionally or knowingly committed aggravated assault of a public servant. But by charging the jury on an un-indicted culpable mental state and by arguing to the jury that recklessness was sufficient to convict Appellant, especially where Appellant's mental state was a disputed fact issue, the charge egregiously harmed Appellant by lowering the State's burden of proof. We reverse the trial court's judgment convicting Appellant of aggravated assault of a public servant and remand for further proceedings. *See* Tex. R. App. P. 43.2(d).

Appellant also challenges his conviction for evading arrest or detention and points to the repetitive fine, which was also assessed as part of his concurrent aggravated-assault conviction. Because we are reversing the aggravated-assault judgment, including the imposed fine, we need not address Appellant's third issue and affirm the trial court's judgment convicting Appellant of evading arrest or detention. *See* Tex. R. App. P. 43.2(a).

/s/ Lee Gabriel

Lee Gabriel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: May 9, 2019