

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-23-00166-CR

———————————————

CODY BRAGGS, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from Criminal District Court No. 2
Tarrant County, Texas
Trial Court No. 1676970

---

Before Sudderth, C.J.; Birdwell and Wallach, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

Appellant Cody Braggs was convicted of (1) continuously sexually abusing his two former stepdaughters, K.S. (Kim) and T.D. (Tina),[1] and (2) committing indecency with a child by touching Kim's breasts.[2] *See* Tex. Penal Code Ann. §§ 21.02(b), .11(a)(1). The jury charge submitted in his case was seriously flawed, but Braggs challenges only two of those errors on appeal. Despite the flawed nature of the charge, because it is extremely unlikely that either challenged error caused Braggs egregious harm, we will affirm.

## I. Background

Braggs sexually abused Kim for more than a year before he inappropriately touched Tina, who informed their mother (Mother). Both girls testified at Braggs's trial.

Tina told the jury how, in mid-2019, when she was five years old, Braggs touched her vagina over her clothes. She had just returned home from preschool when it happened; Braggs directed her to go to her room, and then he followed her, touched her, and told her not to tell Mother. But Tina soon reported the incident to

---

[1]To protect the minor complainants' identities, pseudonyms are used for the girls and for their mother. *See* Tex. R. App. P. 9.10(a)(3); 2d Tex. App. (Fort Worth) Loc. R. 7; *Stephenson v. State*, 673 S.W.3d 370, 375 n.1 (Tex. App.—Fort Worth 2023, pet. ref'd).

[2]Braggs was sentenced to 30 years' confinement for continuous sexual abuse and 4 years' confinement for indecency with a child.

Mother anyway,[3] prompting her to kick Braggs out of the home and, later, to divorce him.

After Tina's outcry and Braggs's banishment from the home, Kim—the older of the two girls—revealed that Braggs had been sexually abusing her for quite a while, from the time she was about 10 or 11 years old until Mother kicked Braggs out of the home when Kim was around 12.[4] Kim later recalled that the abuse had started while Mother was recovering from her 2017 open-heart surgery and told her forensic interviewer that, by the time Braggs moved out, the touching "was happening on a constant basis, . . . every other day."

Kim described multiple, specific instances of abuse for the jury, including Braggs's "slapp[ing her] on the butt," his "forcefully push[ing her] up against things" like walls or appliances and "touch[ing] on" her breasts and vagina over her clothes, his "tak[ing] the long way" to school and touching her vagina over her clothes en route, his "grinding" on her "pelvic area" on the living-room floor, and his putting his penis in her mouth while she slept.[5]

---

[3]In her forensic interview and at trial, Tina confirmed that Braggs had not touched her private parts on any other occasions.

[4]By the time of trial, Kim was 16 years old, and Tina was 9 years old.

[5]Kim explained that, because she felt something in her mouth, she woke up. When she did, she found Braggs in her room and "white stuff"—which she later understood to be semen—in her mouth.

In addition to the two girls' testimony at Braggs's trial, the State presented testimony from Mother, from the detective who had worked on the case, from the sexual assault nurse examiner (SANE) who had examined Kim, from the forensic interviewer who had spoken with the girls in late 2020 and early 2021, and from Tina's therapist. The State also offered copies of the girls' videotaped forensic interviews in which they described their abuse and a copy of Braggs's videotaped interview with police regarding a separate crime—online solicitation of a minor—for which he had been arrested in early 2020.[6] Braggs denied committing any of the sexual abuse alleged, and although he did not call any witnesses in his defense, he used his cross-examinations and jury arguments to attack Kim's and Tina's credibility.

After the evidence closed, the trial court charged the jury on six offenses: one count of continuous sexual abuse of a child, four lesser-included counts—two of aggravated sexual assault and two of indecency with a child—and one separate count of indecency with a child by touching Kim's breast. Braggs did not raise any objections to the jury charge. But the charge did not mention breast-touching as a method for committing indecency with a child, it did not reference the fact that such

---

[6]The State offered evidence that, after Mother and Braggs separated, in late 2019 and early 2020, he had used a homosexual-dating app to solicit a male whom he believed to be a 15-year-old boy. The boy's profile, however, had been created by the police. In his post-arrest interview, Braggs admitted having sexual conversations with three underage boys on the dating app, but he claimed that he had been drunk and that he had been attempting to entertain the boys to protect them from harmful predators on the app.

breast-touching could not serve as a predicate offense for purposes of continuous sexual abuse, and despite reciting the nuances of the unanimity requirement as applied to the offense of continuous sexual abuse, it did not contain more than a generic unanimity instruction for the remaining counts.

During the jury's deliberations, it sent out a note inquiring whether the separate count of indecency by breast-touching "require[d] a unanimous vote for a guilty verdict."[7] The trial court responded by referring the jury to the generic unanimity instruction in the charge, which stated that the "verdict must be by a unanimous verdict of all members of the jury."

In the end, the jury found Braggs guilty of continuous sexual abuse and of indecency with a child by touching Kim's breast. *See id.* §§ 21.02(b), .11(a)(1). It set Braggs's punishment at confinement for 30 years and 4 years respectively, and the trial court sentenced Braggs accordingly.

## II. Discussion

Braggs raises two unpreserved[8] jury-charge issues on appeal: (1) the trial court's failure to instruct the jury that breast-touching did not qualify as a predicate "act of sexual abuse" for purposes of continuous sexual abuse, *see id.* § 21.02(c); and (2) the trial court's failure to instruct the jury that, to convict him of the separate

---

[7]Although the appellate record does not contain a copy of the jury note or the trial court's response, the trial court read both documents into the record.

[8]It is undisputed that Braggs did not preserve his challenges to the jury charge.

5

count of indecency with a child, the jury was required to be unanimous on the particular act of breast-touching that had occurred.  Each, Braggs contends, resulted in egregious harm.

## A.    Governing Law

To prove continuous sexual abuse of a child, the State must offer evidence of two or more predicate offenses that, in addition to meeting certain parameters not relevant here, qualify as "acts of sexual abuse."  *Id.* § 21.02(b).  The definition of continuous sexual abuse is thus interwoven with the definitions of the pleaded predicate offenses.  *See id.* § 21.02(c) (defining "act of sexual abuse" by referencing definitions of predicate offenses).

Generally, aggravated sexual assault of a child qualifies as a predicate "act of sexual abuse," as does indecency with a child by contact.  *Id.* § 21.02(c)(2), (4).  But the latter qualifies as a predicate act only "if the actor committed [it] in a manner other than by touching . . . the breast of a child."  *Id.* § 21.02(c)(2).  Indecency with a child by breast-touching, if charged, is a separate offense.  *See id.*

In convicting a person for continuous sexual abuse, "members of the jury are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed" as long as the jurors "agree unanimously that the defendant, during a period that is 30 or more days in duration, committed two or more acts of sexual abuse."  *Id.* § 21.02(d).  But for other offenses—such as indecency with a child, for which each incident of

6

abusive touching is a separate unit of prosecution, *see Francis v. State*, 36 S.W.3d 121, 124 (Tex. Crim. App. 2000) (op. on reh'g)—"incident[ ]unanimity" is required. *Ansari v. State*, 511 S.W.3d 262, 265–66 (Tex. App.—San Antonio 2015, no pet.) (terming requirement the "incident-unanimity requirement"). That is to say, "each and every juror [must] agree[] that the defendant committed the same, single, specific criminal act." *Ngo v. State*, 175 S.W.3d 738, 745 (Tex. Crim. App. 2005).

## B.  Standard of Review

The trial court must instruct the jury on the law applicable to the case. Tex. Code Crim. Proc. Ann. art. 36.14. If an appellant claims that the trial court failed to do so, we review the "alleged jury-charge error . . . regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). The appellant's failure to preserve the error impacts only the degree of harm required for reversal. *See Reed v. State*, 680 S.W.3d 620, 625–26 (Tex. Crim. App. 2023).

Unpreserved charge error warrants reversal if the error resulted in egregious harm. *Id.*; *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). An error causes egregious harm if it has an actual (as opposed to a theoretical) impact that "affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Reed*, 680 S.W.3d at 626; *see Arrington v. State*, 451 S.W.3d 834, 840 (Tex. Crim. App. 2015); *Ngo*, 175 S.W.3d at 750. This is a "difficult standard and must be proved on a case-by-case basis." *Ellison v. State*, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002).

7

To determine whether egregious harm occurred, we consider "the actual degree of harm . . . in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel[,] and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171; *see Reed*, 680 S.W.3d at 626.

## C.    Jury Charge

As noted, Braggs's appeal centers on the language of the jury charge. That charge included six offenses: continuous sexual abuse, four lesser-included offenses, and indecency with a child by breast-touching.

The abstract portion of the charge defined continuous sexual abuse as requiring two or more "acts of sexual abuse," which it stated could be acts of "aggravated sexual assault of a child or indecency with a child."[9] While the charge did not define "aggravated sexual assault of a child," it did define "indecency with a child," stating that a person committed such crime if he engaged in or caused a child to engage in "sexual contact." "Sexual contact" was defined as "touching . . . of any part of the genitals of a child with the intent to arouse or gratify the sexual desire of any person." Touching of the breasts was not mentioned—it was neither included in nor expressly excluded from the definitions of "sexual contact," "indecency with a child," or for that matter, "continuous sexual abuse."

---

[9]For quotations from the jury charge, the capitalization has been altered to improve readability.

8

Following these abstract paragraphs, the charge applied the law to Braggs's case. For the offense of continuous sexual abuse, and as relevant here, the jury was asked to determine whether Braggs had committed "at least two acts of sexual abuse . . . , including an act constituting the offense of aggravated sexual assault of a child against [Kim], and an act constituting the offense of indecency with a child against [Kim], and an act constituting the offense of indecency with a child against [Tina]." No manner or means was specified for any of the predicate offenses.[10]

As to the application paragraphs relating to the four lesser-included offenses, the charge specified the alleged manner and means, authorizing the jury to convict Braggs on up to four lesser-included counts if it found that Braggs had (1) committed aggravated sexual assault by "caus[ing his] sexual organ . . . to contact [Kim's] mouth"; (2) committed aggravated sexual assault by "caus[ing his] finger . . . to penetrate [Kim's] sexual organ"; (3) committed indecency with a child by "touching any part of [Kim's] genitals"; and (4) committed indecency with a child by "causing [Kim] to touch any part of [his] genitals."

Sandwiched within these lesser-included counts was a jury charge on the separate offense of indecency with a child by breast-touching. For that count, the jury was authorized to convict if it found that Braggs had "engage[d] in sexual contact by touching [Kim's] breast." Again, breast-touching was not mentioned in the charge's

---

[10]"The phrase 'manner or means' describes *how* the defendant committed the specific statutory criminal act." *Ngo*, 175 S.W.3d at 745.

abstract definition of the offense of indecency, and nothing in the application paragraph attempted to explain or reconcile this inconsistency.

As for unanimity, the charge instructed the jury that, to find Braggs guilty of continuous sexual abuse, it was "not required to agree unanimously on which specific acts of sexual abuse were committed . . . or the exact date" of those acts, so long as it unanimously agreed that two or more acts of sexual abuse were committed within the relevant time frame. This instruction came early in the charge, before the application paragraphs. Then later, at the end of the charge, the jury was given the general instruction that its "verdict must be by a unanimous verdict of all members of the jury."[11]

## D.   Continuous Sexual Abuse Jury Charge:  No Egregious Harm

Braggs first claims that the trial court erred by failing to instruct the jury of the breast-touching carveout in the continuous sexual abuse statute, i.e., that breast-touching could not qualify as a predicate "act of sexual abuse." *See* Tex. Penal Code Ann. § 21.02(c)(2). The State concedes that no carveout instruction was given, but it argues that the charge as a whole was not erroneous because breast-touching was not mentioned in the charge's definitions for the predicate offenses anyway.

---

[11]There were two other references to a "unanimous verdict" in the jury charge, but the two references—both of which were in the general instructions that came at the end of the charge—did not explain what precisely the jury was required to be "unanimous" on.

10

## 1.     Presumed Error

Although the continuous sexual abuse statute excludes breast-touching from the list of qualifying predicate "act[s] of sexual abuse," *id.*, whether that carveout must be expressly stated in a jury charge is a separate question, and neither party has cited any on-point case law that holds in one way or the other.[12]  Certainly, including a

---

[12]We contemplated the need for a breast-touching carveout instruction in *Myers*, but that case involved a distinguishing circumstance that is not present here:  the jury charge included breast-touching in the definition of "sexual contact" for purposes of indecency, thereby necessitating a carveout instruction for clarification.  *See Myers v. State*, No. 02-17-00392-CR, 2019 WL 2223578, at *1 (Tex. App.—Fort Worth May 23, 2019, pet. ref'd) (mem. op., not designated for publication) (holding jury charge on continuous sexual abuse erroneous because the abstract portion of the charge (1) "include[d] breast-touching in the definition of '[s]exual contact'" and (2) failed to "carv[e] out indecency with a child by touching her breast from the definition of '[a]ct of sexual abuse'"); *cf. EspinalCruz v. State*, Nos. 05-22-00626-CR, 05-22-00627-CR, 2023 WL 8615813, at *4–5 (Tex. App.—Dallas Dec. 13, 2023, no pet.) (mem. op., not designated for publication) (holding no charge error when jury was instructed on full definition of sexual contact, including breast-touching, but what qualified as a predicate act of sexual abuse was separately defined to include indecency by contact "other than contact with the breast of a child" (emphasis removed)); *Lovell v. State*, No. 11-22-00099-CR, 2023 WL 4937493, at *3–5 (Tex. App.—Eastland Aug. 3, 2023, no pet.) (mem. op., not designated for publication) (holding jury charge did not weigh in favor of egregious harm when breast-touching was included in abstract paragraphs' definitions, but application portion of charge alleged specific manner and means for continuous sexual abuse and touching of the breast was not among them).  Here, the charge's abstract definitions did not mention breast-touching.

Nonetheless, the necessity of a carveout instruction is not a clear-cut issue.  The State put on evidence of breast-touching, the charge's application paragraph for the separate count of indecency with a child presented breast-touching as being an act that constituted that offense, and indecency with a child was listed among the qualifying predicate "acts of sexual abuse" for purposes of continuous sexual abuse.  Nothing in the charge explained to the jury that breast-touching constituted indecency with a child for purposes of the separate count but not for purposes of continuous sexual abuse.

11

breast-touching carve-out would be the safest approach, and the trial court would have committed no error in so doing.

Because the issue is not dispositive, we will assume without holding that the failure to include a carveout instruction was erroneous. *See Barroquin-Tabares v. State*, No. 05-15-00794-CR, 2016 WL 3144160, at *2 (Tex. App.—Dallas May 31, 2016, no pet.) (mem. op., not designated for publication) (assuming without deciding that charge was erroneous by including breast-touching in definition of indecency with a child without clarifying that breast-touching could not constitute predicate act of sexual abuse; holding no egregious harm).

### 2. No Egregious Harm

But even assuming error, Braggs was not egregiously harmed by the omission of the carveout instruction because, while the jury charge as a whole and other record considerations (namely, voir dire) suggest egregious harm, the arguments of counsel and state of the evidence weigh squarely against it.

### a. Jury Charge as a Whole

The jury charge as a whole weighs in favor of harm. Not only was the omission of a carveout instruction presumably erroneous, but the charge was fraught with other errors as well. Among other problems, the charge failed to define the predicate offense of "aggravated sexual assault" in the abstract portion of the

12

charge,[13] and it failed to properly instruct the jury regarding the incident-unanimity requirement applicable to the separate offense of indecency with a child by breast-touching. *See infra* Section II.E.1. Although none of these errors appeared in the application paragraph for continuous sexual abuse, and although "[i]t [wa]s the application paragraph . . . that authorize[d] a conviction," the abstract paragraphs served as a "glossary" of the "concepts and terms used in the application paragraph[]." *Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012). The trial court's failure to define the term "aggravated sexual assault" here left a hole in that glossary. Given that the application paragraph did not specify the manner or means of Braggs's predicate offenses, the jury may have wondered whether breast-touching fell within the definition of aggravated sexual assault, and the charge's "glossary" of terms left that question unanswered.[14]

---

[13]Although Braggs does not challenge this error on appeal, he mentions it as an aggravating factor in his analysis of the charge errors raised, and the State concedes the error.

[14]Braggs also argues that, because the jury charge defined "sexual contact" as "touching . . . of any part of the genitals," the separate count of indecency with a child alleging that he had engaged in "sexual contact" by touching Kim's breast "confused" the jury. To resolve its "confus[ion]," Braggs claims that the jury could have construed the term "genitals" as having a specialized meaning that encompassed the breast—whether or not that was consistent with the term's meaning in common parlance. Braggs does not argue that the jury charge should have defined the term "genitals," though. *Cf. Stubbs v. State*, No. 02-21-00120-CR, 2022 WL 15053320, at *2–3 (Tex. App.—Fort Worth Oct. 27, 2022, no pet.) (mem. op., not designated for publication) (discussing and quoting with approval Amarillo Court of Appeals's holding that "the word 'genitals' is one of common parlance" and need not be defined in jury charge).

The application paragraphs for the four lesser-included offenses in the charge did offer some clarification, however. Through these paragraphs, the jury was notified of the manner and means alleged for each lesser-included predicate offense, and the jury could have inferred—based on the characterization of those four counts as lesser-included offenses—that the same manner and means applied for purposes of continuous sexual abuse.

Unfortunately, such potential clarification was muddied by the disjointed ordering of the offenses in the charge. Rather than grouping the four lesser-included offenses together, the charge instructed the jury on three of the four, then it shifted to the separate offense of indecency with a child by breast-touching before charging the jury on the final lesser-included offense of indecency with a child by genital-touching. In other words, because the charge on indecency by breast-touching was intermixed with the charges for the lesser-included offenses for continuous sexual abuse, even if the jury looked to those lesser-included offenses for guidance regarding the manner and means for the predicate acts of sexual abuse, such guidance was potentially clouded.

Due to the errors in the charge and the muddied nature of its clarifying components, the charge as a whole suggests egregious harm.

### b. Statements During Voir Dire

Other record considerations weigh slightly in favor of harm as well because the State's voir dire presentation may have contributed to the confusion caused by the

14

omitted carveout instruction. *See Reed*, 680 S.W.3d at 630–31 (treating voir dire as relevant record consideration).

During voir dire, the State introduced the elements that it would be required to prove, and it explained that continuous sexual abuse was premised on "two or more acts of sexual abuse," which could be "two acts of indecency with a child or maybe one act of aggravated sexual assault of a child and one act of indecency with a child or two acts of aggravated sexual assault of a child." The State then proceeded to inform the venire that indecency with a child could be committed by, among other things, "touching by the defendant, including touching through clothing, of the breast of the child." The State did not clarify that such breast-touching could not serve as a predicate offense for purposes of continuous sexual abuse.

Later in voir dire, the State delved further into the definition of the term "sexual contact" for purposes of proving the offense of indecency with a child. *See* Tex. Penal Code Ann. § 21.11(a)(1), (c). It acknowledged that the term "sexual contact" would "come[] up a lot" and that the term was statutorily defined to include "any touching of a child's genitals, any touching of . . . an adult's genitals by a child[,] or any touching of the breast of a child by an adult." Again, the State did not clarify that, if sexual contact occurred by breast-touching, then it could not serve as a predicate "act of sexual abuse" for the offense of continuous sexual abuse. And while Braggs's voir dire presentation did not add to this confusion, it did not clear it up either.

15

Thus, the State's discussion of the offenses' definitions likely left the venire with the impression that the offense of indecency—whether charged as a stand-alone crime or as a predicate offense for continuous sexual abuse—could be committed by breast-touching. Because the State's voir dire increased the potential for actual harm from the omission of the carveout instruction, this factor weighs in favor of egregious harm.

### c. Arguments of Counsel

But the State's arguments weigh against egregious harm, as they mitigated the effect of the carveout instruction's omission. *See Arrington*, 451 S.W.3d at 844 (noting that, "[u]nder this factor, we look to whether any statements made by the State, appellant, or the court during the trial exacerbated or ameliorated error in the charge").

Nothing in counsels' opening statements exacerbated or ameliorated the error. Neither Braggs's opening statement nor the State's mentioned the specific acts of sexual abuse alleged or distinguished between the crimes charged in Braggs's indictment. Instead, the State used its opening to give an overview of its case, while Braggs urged the jury to focus on "[c]ommon sense, logic, [and] details" and to "track the inconsistencies."

Braggs's closing argument was similar. Centering on the theme that "[c]onsistency is key," he went through a laundry list of alleged inconsistencies in the girls' statements and testimonies. But at no point did he discuss the elements of the

16

offenses in the charge, distinguish between those offenses, or address which offenses or acts could serve as predicates for continuous sexual abuse.

The only aspect of the parties' arguments that commented on the breast-touching carveout came when the State walked the jury through the charge in its closing. During this brief walkthrough, the State told the jury that "a breast touch is not talked about in the continuous paragraph," effectively clarifying that the breast-touching incidents were not predicate offenses for Braggs's charge for continuous sexual abuse. *See Campbell v. State*, 664 S.W.3d 240, 253 (Tex. Crim. App. 2022) (holding arguments of counsel weighed against harm when charge failed to tailor definition of "intentionally" to result-of-conduct offense but arguments "focused on whether [a]ppellant intended the result" and "undoubtedly helped to remedy the alleged error"); *cf. Ngo*, 175 S.W.3d at 751–52 (holding erroneous unanimity instruction resulted in egregious harm when "the jury was affirmatively told, on three occasions, twice by the prosecutor and once by the trial judge, that it need not return a unanimous verdict").

Because the statements and arguments of counsel did not exacerbate the missing instruction and instead helped clarify that breast-touching was not a predicate "act of sexual abuse," *see* Tex. Penal Code Ann. § 21.02(c)(2), this factor suggests a lack of actual, egregious harm.

### d.    State of the Evidence

The state of the evidence further suggests that it is unlikely the omitted carveout instruction actually impacted the jury's verdict or affected the very basis of the case. *See Manrrique v. State*, No. 02-19-00458-CR, 2021 WL 4205011, at *2 (Tex. App.—Fort Worth Sept. 16, 2021, no pet.) (mem. op., not designated for publication) (noting that, in considering state of the evidence, we "assess whether the evidence increased or decreased the risk that the jury-charge error actually harmed the defendant").

The evidence at trial presented the jury with an all-or-nothing, he-said-she-said determination. *See Arrington*, 451 S.W.3d at 841–44 (agreeing with State's argument that defendant's "trial strategy left the jury with an all-or-nothing decision" in he-said-she-said case and holding state of the evidence weighed against egregious harm); *Wahl v. State*, No. 02-20-00040-CR, 2022 WL 247434, at *6 (Tex. App.—Fort Worth Jan. 27, 2022, pet. ref'd) (mem. op., not designated for publication) (weighing state of the evidence against egregious harm because "there was no middle ground in the evidence offered at trial" and the jury credited the complainant's testimony). Kim and Tina testified to Braggs's abusive acts—which went beyond touching Kim's breast—and the State offered evidence to support and contextualize the girls' testimony. Rather than denying specific instances of abuse or distinguishing between touching of the breast and touching of other private parts, Braggs categorically denied that he had committed any of the acts alleged.

18

His defensive strategy thus focused on attacking the girls' credibility. *See Manrrique*, 2021 WL 4205011, at *7 (weighing state of the evidence against egregious harm when defendant took "an all-or-nothing strategy focused on [the complainant's] credibility"). Braggs used his cross-examinations to highlight inconsistencies and to question the girls regarding details that had changed. He asked Kim, for example, about her prior statement that the first incident of abuse had occurred while she was doing laundry—which allegedly differed from her testimony that it had been while she was cooking—and about her prior statement that she had been wearing a pink-and-gray pineapple bathing suit during another incident—in contrast to her testimony that the bathing suit had been black. During Mother's testimony, Braggs pointed out differences between Mother's recollection and the girls' prior statements, and he implied that Mother herself may have doubted the girls' truthfulness by noting that she had not called the police after Tina's initial outcry, that she had waited five months to file for divorce, and that she had not requested a protective order.

Similarly, when cross-examining individuals who had spoken with the girls, Braggs emphasized that neither a detective, nor a forensic interviewer, nor a SANE nurse could determine if a child was lying, and he repeatedly asked the witnesses to acknowledge that "children lie" and "make false allegations." And during his cross-examinations of the forensic interviewer and of Tina's therapist, he worded his questions to characterize therapy as having "coached" Tina and "prepped her for court."

19

The jury's consideration of continuous sexual abuse thus turned on a credibility question: did the jury believe the girls (or at a minimum, Kim) or not?[15] If it did not, then Braggs had not committed any of the offenses charged. But if it did, then Braggs had done far more than touching Kim's breast—he had also, among other things, repeatedly touched her vagina, put his penis in her mouth, and touched Tina's vagina. *See Green v. State*, 476 S.W.3d 440, 451 (Tex. Crim. App. 2015) (holding lack of some harm from erroneous inclusion of definitions in charge because "the central dispute at trial was as to the complainant's credibility in asserting that appellant had sexually touched her at all, as opposed to a factual dispute as to the type or degree of touching alleged by the complainant"). The verdict reflects that the jury "credited [the girls'] stor[ies] and did not believe [Braggs's] categorical denial of all accusations." *Arrington*, 451 S.W.3d at 844 (weighing state of the evidence against egregious harm in he-said-she-said case). It is difficult to see how the inclusion of a breast-touching carveout instruction would have changed this central credibility determination. *See Manrrique*, 2021 WL 4205011, at *7 (weighing state of the evidence against egregious harm when defendant "argued that no offense at all had occurred" and the complainant's "credibility was the chief focus of [his] strategy"). The state of the evidence thus indicates the absence of actual, egregious harm.

---

[15]Because Tina testified to only a single incident of abuse, the jury was required to believe Kim's testimony to convict Braggs of continuous sexual abuse.

20

### e. Overall

Despite the errors in the jury charge and the potentially confusing references to breast-touching during voir dire, the State's arguments helped clarify that breast-touching was not a part of Braggs's continuous sexual abuse charge. And more importantly, the state of the evidence demonstrates that the case turned on a he-said-she-said credibility determination. Because the jury found Braggs guilty of both continuous sexual abuse and indecency by breast-touching, it necessarily believed the girls'—or at least Kim's—testimony. Nothing in the record indicates that the inclusion of a breast-touching carveout instruction would have changed that. The instruction's omission, therefore, even if erroneous, is unlikely to have actually affected "the very basis of the case" or Braggs's "defensive theory." *Reed*, 680 S.W.3d at 626. We overrule Braggs's first issue.

## E. Indecency Jury Charge: No Egregious Harm

Braggs's second and final issue complains of another jury-charge error: the trial court's failure to instruct the jury that it was required to be unanimous as to the particular act that had occurred for the separate count of indecency with a child by breast-touching.[16] We agree with Braggs that the charge was erroneous, but once again, the error was not egregiously harmful.

---

[16]Braggs also references the trial court's failure to instruct the jury that incident unanimity was required for each of the lesser-included offenses, but the jury did not reach those offenses.

### 1.    Error

A jury's verdict of conviction must be unanimous, and the jury must be instructed to that effect. *See* Tex. Code Crim. Proc. Ann. art. 36.14; *Cosio v. State*, 353 S.W.3d 766, 771 (Tex. Crim. App. 2011). "[N]on-unanimity may occur when the State charges one offense and presents evidence that the defendant committed the charged offense on multiple but separate occasions." *Cosio*, 353 S.W.3d at 772. That was the risk here.

Braggs was charged with committing indecency with a child by touching Kim's breast, and the State presented evidence that he had touched Kim's breast on multiple occasions, with each incident being a separate potential offense and unit of prosecution. *See Francis*, 36 S.W.3d at 123–25 (holding that jury charge was erroneous when it disjunctively submitted two incidents of touching and explaining that each incident was a separate offense). The jury was then authorized to convict Braggs for one count of indecency with a child if it found that he had "engage[d] in sexual contact by touching the breast of [Kim]." And because the State was not bound to the specific date alleged in its indictment—and the jury was instructed to that effect—the charge permitted the jury to rely on any act of breast-touching that had occurred "at any time prior to the presentment of the [i]ndictment." *See Sledge v. State*, 953 S.W.2d 253, 255–56 (Tex. Crim. App. 1997); *Ramirez v. State*, No. 02-18-00131-CR, 2019 WL 238123, at *6 (Tex. App.—Fort Worth Jan. 17, 2019, pet. ref'd) (mem. op., not designated for publication). This created the risk that the individual jurors

22

would rely on different instances of breast-touching. *See Young v. State*, No. 04-18-00564-CR, 2020 WL 1695511, at \*2 (Tex. App.—San Antonio Apr. 8, 2020, pet. ref'd) (mem. op., not designated for publication) (addressing similar case in which complainant testified that defendant touched her breasts at least twenty times and defendant was charged with four counts of indecency so "the jurors could have agreed that [the defendant's] conduct satisfied each of the indecency counts but disagreed as to which four of the twenty acts of indecency satisfied the respective indecency counts"). Consequently, to ensure unanimity, "[t]he judge's charge . . . need[ed] to instruct the jury that its verdict must be unanimous as to a single offense or unit of prosecution among those presented." *Cosio*, 353 S.W.3d at 772. It did not do so.

Although the State argues that the charge's general unanimity instruction—which required "a unanimous verdict of all members of the jury"—was sufficient to "ma[k]e clear" that unanimity was required, the Court of Criminal Appeals has held otherwise. *Id.* at 770–74 (holding that "standard, perfunctory unanimity instruction" that told the jury "at the end of each charge, that its verdicts must be unanimous" was insufficient). A "standard, perfunctory unanimity instruction," such as the one here, still allowed "[t]he jury [to] believe[] that it had to be unanimous about the offenses, [but] not the criminal conduct constituting the offenses." *Id.* at 774; *see Young*, 2020 WL 1695511, at \*2 (applying *Cosio* and holding that the "generic [unanimity] instruction [wa]s not sufficient to prevent a non-unanimous verdict" when defendant

23

was charged with four counts of indecency and there was evidence of more than twenty breast-touching incidents).

Because the charge's perfunctory unanimity instruction was insufficient to ensure unanimity as to the specific incident of breast-touching that had occurred, and because the jury was not instructed that such incident unanimity was required, the jury charge was erroneous.

### 2. No Egregious Harm

Nonetheless, the error did not cause Braggs egregious harm. While the jury charge as a whole and other record considerations—a jury note—suggest harm, neither the parties' presentations during voir dire nor the arguments of counsel exacerbated the error, and the state of the evidence demonstrates the unlikelihood of actual harm for the same reason discussed in our previous harm analysis: the case turned on an all-or-nothing credibility determination.

### a. Jury Charge as a Whole

The jury charge as a whole suggests harm because it permitted a non-unanimous verdict based on the evidence presented. *Cosio*, 353 S.W.3d at 777 (weighing jury charge that permitted similar non-unanimous verdict in favor of egregious harm); *Wesley v. State*, No. 06-20-00098-CR, 2021 WL 5931677, at *3 (Tex. App.—Texarkana Dec. 16, 2021, no pet.) (mem. op., not designated for publication) (weighing jury charge in favor of egregious harm when charge permitted non-unanimous verdict because evidence revealed multiple breast-touching incidents and

24

charge contained only "general, boilerplate" unanimity language); *Young*, 2020 WL 1695511, at *3 (weighing jury charge in favor of egregious harm when multiple acts of breast-touching were shown and jury charge permitted non-unanimous verdict).

The State contends that any harm from this error was mitigated, though, by the specialized unanimity instruction for continuous sexual abuse. That instruction authorized the jury to convict Braggs of continuous sexual abuse without being unanimous regarding the specific predicate acts committed. Because such instruction was specific to the offense of continuous sexual abuse, the State claims that it stood in "stark contrast" to the generally applicable, perfunctory unanimity instruction, thereby clarifying that—unlike the specialized unanimity requirement for continuous sexual abuse—incident unanimity was required for all other offenses. We disagree.

The perfunctory unanimity instruction given at the close of the charge required "a unanimous verdict of all members of the jury" on all counts, including the count of continuous sexual abuse. The charge thus presented the generic unanimity instruction as being completely consistent with the unanimity instruction specific to continuous sexual abuse. Put differently, the latter was a clarification of what constituted a "unanimous verdict" in the context of continuous sexual abuse. And this clarification planted the idea that the generic instruction's "unanimous verdict" requirement did not necessitate agreement regarding the specific incident of abuse. But nothing told the jury how the unanimity requirement differed in the context of indecency. Without clarification, "[t]he jury may have believed that it had to be unanimous about the

25

offenses, not the criminal conduct constituting the offenses." *Cosio*, 353 S.W.3d at 774.

Plus, again, the lack of an incident-unanimity instruction was not the only error in the charge. In addition to lacking an incident-unanimity instruction, a carveout instruction, and a definition of aggravated sexual assault, the jury charge failed to include breast-touching within the abstract definition of indecency with a child—despite authorizing the jury to convict Braggs of the offense if it found that he had touched Kim's breast. In short, the charge was woefully flawed.

This factor weighs in favor of egregious harm.

### b. Jury Note

The record contains another consideration that weighs in favor of egregious harm: a jury note. During the jury's deliberations, it sent out a note to ask whether the separate count for indecency with a child by breast-touching "require[d] a unanimous vote for a guilty verdict." The note indicates that the jury sought—and perhaps felt like it needed—clarification of the unanimity requirement's application to the offense. But in response, the trial court referred the jury to the perfunctory unanimity instruction, which we have already held was insufficient to clarify the need for incident unanimity. *See supra* Section II.E.1; *cf. Rodriguez v. State*, No. 02-18-00057-CR, 2019 WL 406167, at *7 (Tex. App.—Fort Worth Jan. 31, 2019, no pet.) (mem. op., not designated for publication) (weighing factor against egregious harm in part

26

because "the jury's sole note did not show that the jury sought any clarification regarding unanimity").

Because the jury note suggests that the omitted instruction actually impacted the jury's deliberations, this weighs in favor of egregious harm.

### c. Statements During Voir Dire

However, another record consideration—voir dire—is neutral.

During voir dire, the State discussed the unanimity requirement as it applied to continuous sexual abuse, clarifying that the jurors needed to "agree that two or more acts happened, not which two acts" so "the 12 people on the jury don't have to all agree that there were two acts of indecency with a child or maybe one act of aggravated sexual assault of a child and one act of indecency." But this discussion was limited to the offense of continuous sexual abuse; neither the State nor Braggs used voir dire to discuss the unanimity requirement's application to the offense of indecency with a child by breast-touching.

Because the parties' presentations during voir dire neither mitigated nor exacerbated the lack of an incident-unanimity instruction, this consideration is neutral.

### d. Arguments of Counsel

The opening statements and arguments of counsel are neutral as well.

The parties' opening statements did not discuss the nuances of the unanimity requirement, and Braggs did not mention it in his closing argument, either. Instead,

27

as already discussed, Braggs and the State focused their presentations on the girls' credibility—the core issue in the case. *See supra* Section II.D.2.d.

The only mention of unanimity in the parties' arguments came during the State's closing when it discussed unanimity in the context of continuous sexual abuse. It told the jurors that, to be "unanimous on continuous," they "d[id]n't all have to agree exactly what two acts happened[; a]ll [they] ha[d] to agree on [wa]s that two acts happened of continuous sexual abuse of a child and that they happened 30 days apart." The State did not represent that the same rule applied to the offense of indecency with a child by breast-touching, though; it did not comment on the unanimity requirement's application to that offense.

Because neither party exacerbated or ameliorated the incident-unanimity error, this factor is neutral. *See Arrington*, 451 S.W.3d at 844 (treating factor as neutral when arguments of counsel neither contributed to nor ameliorated error in the charge); *Wesley*, 2021 WL 5931677, at *4 (similar); *cf. Cosio*, 353 S.W.3d at 777 (weighing arguments of counsel against egregious harm because "neither of the parties nor the trial judge added to the charge errors by telling the jury that it did not have to be unanimous about the specific instance of criminal conduct"); *Young*, 2020 WL 1695511, at *3 (weighing arguments of counsel against egregious harm when counsel did not exacerbate charge error and lack of proper unanimity instruction did not affect defensive theory that "the only evidence [wa]s the complainant's word and that the complainant lied").

### e.     State of the Evidence

Nonetheless, the state of the evidence refutes the idea that any actual harm occurred.

As already discussed, the parties' evidence—and Braggs's defensive theory—presented the jury with an all-or-nothing, he-said-she-said determination. Braggs did not take aim at Kim's allegations of breast-touching any more than he took aim at her other allegations of sexual abuse. Although his cross-examinations drew out inconsistencies in Kim's recollections of specific instances of sexual abuse—including her recollections of Braggs's touching her breast—this was done as part of a general attack on Kim's credibility.

The jury's verdict reflects that it necessarily believed Kim's statements and rejected Braggs's categorical denial. *See Wesley*, 2021 WL 5931677, at *3 (holding that state of the evidence weighed against egregious harm when charge permitted non-unanimous verdict due to evidence of multiple breast-touching incidents but "the jury was faced with a 'he said, she said' situation" and "by finding [the defendant] guilty of indecency, [it] clearly rejected [his] defensive theory"). On this record, it would have been illogical for the jury to have accepted Braggs's categorical denial, but only as to certain instances of breast-touching.

Therefore, for the same reasons enunciated in our analysis of the omitted carveout instruction's harm, the state of the evidence indicates a lack of actual, egregious harm.

### f. Overall

While the jury charge and note suggest harm, the state of the evidence demonstrates a lack of actual harm for the reasons discussed in our previous harm analysis: the case came down to an all-or-nothing, he-said-she-said determination. *See Cosio*, 353 S.W.3d at 777–78 (reviewing similar unpreserved lack of incident-unanimity instruction for egregious harm). By finding Braggs guilty, the jury necessarily believed Kim's testimony and rejected Braggs's categorical denial. *See Gomez v. State*, No. 14-17-00453-CR, 2018 WL 4781046, at *2–3 (Tex. App.—Houston [14th Dist.] Oct. 4, 2018, no pet.) (mem. op., not designated for publication) (holding state of the evidence weighed against egregious harm when charge lacked proper unanimity instruction but defendant categorically denied all allegations and guilty verdicts showed that the jury "necessarily disbelieved appellant's defensive evidence"). It is extremely unlikely that the individual jurors believed Braggs's categorical denial as to certain breast-touching allegations but not as to others.

Overall, then, the record indicates that the omitted incident-unanimity instruction did not cause actual harm that "affect[ed] the very basis of the case, deprive[d Braggs] of a valuable right, or vitally affect[ed] a defensive theory." *Reed*, 680 S.W.3d at 626; *see Arrington*, 451 S.W.3d at 840; *Cosio*, 353 S.W.3d at 777–78. We overrule Braggs's second issue.

### III.  Conclusion

The jury charge in this case was seriously flawed.  A defendant deserves an accurate jury charge that correctly sets forth the law, particularly when the defendant's liberty is on the line.  Braggs did not get that here.  Had he objected to the errors in the charge and been denied relief, such errors might have necessitated a retrial.  But because Braggs did not object, reversal is warranted only if the charge errors caused egregious harm—a "difficult standard." *Ellison*, 86 S.W.3d at 227.  Given the he-said-she-said nature of the case, the charge errors do not meet this difficult standard.  Consequently, we must affirm.  *See* Tex. R. App. P. 43.2(a).

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  April 4, 2024

31